WILLIAM B. GREENOUGH, Atty. Gen. *ex rel.* BOARD OF CANVASSERS AND REGISTRATION OF PAWTUCKET, *et als.*

MARCH 15, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Taxation.   Notice.*

A notice given by assessors of taxes, under the statute, stating that June 19, at 5 P. M., had been selected for the assessment of a tax, and that they would be in session from June 20th to June 30th to receive accounts of ratable estates and that all real and personal estate would be taxed to the persons owning or holding the same at 5 P. M., June 19th, is sufficiently definite.

*(2)   Taxation.   Distinguishing Those Who Render Accounts.*

Gen. Laws, 1909, cap. 58, § 8, requires assessors of taxes in their assessment list to distinguish those who give an account from those who do not.

*Held,* on petition for certiorari attacking the regularity of an assessment, that as it did not appear by the petition that any person rendered an account, the objection that the assessors had not so distinguished as required by statute, was without merit.

*(3)   Taxation.   Description of Property.   Assessment.*

On a petition for certiorari at the relation of a tax payer against tax assessors, board of canvassers and city treasurer, objecting to placing certain names assessed for personal property, on the voting list, on account of illegal assessment, objections that the property was not described or specified so that it could be levied upon and sold in default of payment of the tax, will not be considered, the proceeding not being brought by a person against whom a tax had been assessed, for the purpose of objecting to the legality of such assessment, and the collector of taxes making no complaint that he could not properly perform his duties.

*(4)   Description of Personal Property.   Taxation.*

Objection to a tax assessment that the personal property was not described, located or named, and hence could not be levied upon, while the real estate

was described and could be located and levied upon, therefore discriminating between the classes of property, is without merit, since the injury, if there be any, is due to the inherent difference between the classes of property and cannot be attributed to the assessors.

The taxing of personal property does not operate to immobilize it.

(5) *Taxation. Assessors of Taxes. Presumption in Favor of Proper Performance of Acts.*

Assessors of taxes are entitled to the presumption that their official acts were properly performed until the contrary is proved; hence the court cannot infer because a large number of persons have been assessed for the same particular sum, that the assessors used no lawful method to ascertain what property the persons owned, but merely assessed them to enable them to vote. The presumption of innocence is sufficient in the premises.

CERTIORARI.    Heard on motion to dismiss, and granted.

DUBOIS, C. J.    This is a petition for a writ of certiorari, which reads as follows:

"William B. Greenough, Attorney General, in behalf of the inhabitants and tax payers of the city of Pawtucket, respectfully shows and represents as follows: Upon the relation of Hugh J. Carroll of said Pawtucket:

"I    .    .    .    That Hiram C. Jenks, Henri L'Hereux and Richard M. Browning of Pawtucket in the county of Providence in said state, are the members of and compose the Board of Canvassers and Registration of said Pawtucket; and that Frederick G. Daniels, Charles M. Read and Charles R. Bucklin are the members of and compose the Board of Assessors of Taxes of said Pawtucket; and that J. Ellis White is the City Treasurer and Collector of Taxes of said Pawtucket.

"II.    .    .    .    That Section 2, Article II, of the Constitution relating to the qualification of so-called Personal Property voters, reads as follows:

" 'Every male citizen of the United States of the age of 21 years    .    .    .    shall have the right to vote in the election of all civil officers and on all questions in all legally organized town or ward meetings: *Provided*, that no person shall at any time be allowed to vote in the election of the city council of any city, or upon any proposition to impose a tax, or for

the expenditure of money in any town or city, unless he shall, within one year next preceding have paid a tax *assessed upon his property* valued at least at one hundred and thirty-four dollars.'

"III.   .   .   .   Section 9, Chapter 57, General Laws,. provides as follows:

" ' All ratable personal property shall be taxed *to the owner* thereof in the town in which the owner shall have had his actual place of residence   .   .   .   except as provided in the following clauses of this section.'

and your relator shows that, in said clauses, special mention is made, and descriptions given, of the various kinds of things which are under certain conditions deemed to be personal property.

"IV.   .   .   .   Section 10 of said Chapter 57 states in detail what shall be deemed to be personal property, to wit:—

" ' Personal property for the purpose of taxation shall be deemed to include all Goods, Chattels, Debts due from solvent persons, Money, Effects, wherever they may be, all Ships and Vessels at home or abroad, all Stocks and Securities, Shares in any Bank, or Banking Institution; in any Turnpike, Bridge or other Corporation, within or without the state, except such as are exempt from taxation, etc.'

"V.   .   .   .   Section 6, Chapter 58, General Laws, requires assessors of taxes to give notice of the time, etc., of assessing the taxes, and provides as follows:

" ' Such notice shall require every person and body corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate, DESCRIBING AND SPECIFYING the value of EVERY PARCEL of his real and PERSONAL estate at such time as they may prescribe.'

A copy of the notice issued by said Assessors for the year A. D. 1911 is herewith filed, marked Petitioner's Exhibit No. 1.

"VI.   .   .   .   Section 8 of said Chapter 58 provides as follows:

" 'The assessors shall make a list containing the full, true and fair cash value of all the ratable estate in the town, placing real and personal estate in separate columns, and DISTINGUISHING those who give an account from those who do not, and shall apportion the tax accordingly.'

"VII. . . . Chapter 60 of the General Laws provides for the collecting of taxes, and Section 19 of said chapter authorizes the collector to distrain the personal property taxed, Sections 21, 22, 23, 24 and 25 of the same chapter provide for the levy upon, the advertisement of, and the sale of, such personal property.

"VIII. . . . Section 16 of Chapter 7 of the General Laws, as amended by Section 1 of Chapter 640, Public Laws, August, 1910, requires Boards of Canvassers to 'annually place upon the voting lists the names of persons who have previously been upon the voting lists . . . against whom a property tax of one dollar or upwards shall have been assessed.' And Section 18 of said Chapter 7, as amended by said Chapter 640 requires the assessors of Providence and Pawtucket . . . 'annually on or before the 15 days of September (to) deliver to the Board of Canvassers and Registration of their respective cities a copy of the tax assessment of said city' with the street address of such persons as are assessed.

"And Section 2 of Chapter 640, Public Laws, amends Section 1 of Chapter 8, General Laws, second clause, so that boards of canvassers are required to make a preliminary canvass on the Tuesday next after the first Monday of September each year, making out a correct alphabetical list of Personal Property Voters, and Assembly District lists.

"IX. . . . Your relator further represents and shows that, when said names of persons assessed for personal property are placed on said voting lists in the city of Paw-tucket, and before the time when their taxes must be paid to qualify them as voters, such persons (are thereby) enabled to participate in the caucuses for the nomination of aldermen

and councilmen in said city; and, if the tax assessed against them is paid, whether such persons actually own the property assessed, or not, such persons become personal property voters on such voting lists and will, unless prevented by this court, have, or claim to have, a right to vote in the election of the city council of said city of Pawtucket.

"X.  .  .  . And your relator further shows that said assessors of taxes of Pawtucket have made their assessment for the year A. D. 1911, and, in making said assessment, have assessed an exceedingly large number of persons exactly alike, to wit: for two hundred dollars of personal property, to wit: more than twenty-one hundred persons, to wit 2168, and have also assessed another large number of persons for the exact sum of one hundred and forty dollars, personal property, to wit: 544 persons; and have certified and delivered to the said board of canvassers and registration of Pawtucket lists of the names of said persons, to wit: 2712 names; and said board of canvassers and registration has placed said names upon the voting lists of the several wards of said Pawtucket, so that said persons may vote in said caucuses, and the election of the city council of said Pawtucket, at the election to be held on the 7th day of November, A. D. 1911.

"A copy of said lists for said wards is herewith filed, marked Petitioner's Exhibit No. 2a, 2b, 2c, 2d, 2e, 2f.

"XI.  .  .  . And your relator further represents and shows that said assessors have not distinguished on their said lists of assessments those who have rendered an account of their personal property from those who have not; and said assessment does not show in any manner or form what said personal property so assessed against said persons consists of; or whether the same is for 'Goods, Chattels, Debts due from solvent persons, money, effects, Ships or Vessels, at home or abroad, Stocks, Securities, Shares in any Bank or Banking Institution or in any Turnpike, Bridge or other corporation within or without the state.' Said personal property is not described or specified and the collector of taxes cannot levy upon, advertise and sell the same in default of

the payment of such tax, while the real estate assessed can be located and levied upon.

"XII. . . . And your petitioner further represents and shows that the notice of assessment given by said assessors recites that said tax was ordered to be levied for the 19th day of June, A. D. 1911, and that it was to be assessed by them on said date; also that said assessors should be in session daily from the 20th to the 30th days of June, A. D. 1911, inclusive to receive the accounts brought in by tax payers. The following is that part of said notice requiring tax payers to bring their accounts:

" 'Now, therefore, notice is hereby given that in accordance with said resolution (of the city council ordering said tax) and in conformity with the law in relation to the assessment of taxes, every person, co-partnership and body corporate liable to taxation is required to bring in to the assessors of taxes a true and exact account of all his or their ratable estate, *describing and specifying* the value of *every parcel* of his or their real and personal estate.'

"And, your petitioner shows that said notice, while allowing said tax payers to bring in said accounts from the 20th to the 30th days of June, A. D. 1911, does not specify the day or time upon which, or *as of* which, said tax payers shall value their real and personal estate, *id est.* whether it shall be said 19th day of June, A. D. 1911, or any of the days thereafter up to and including the 30th day of June, A. D. 1911.

"XIII. . . . And your petitioner further shows that said J. Ellis White, City Treasurer and Collector of Taxes of said Pawtucket, is about to proceed in the collection of said taxes.

"XIV. . . . And your petitioner represents and shows that a protest against placing the names of said persons so as aforesaid assessed for personal property, was, on the 28th day of August, A. D. 1911, filed with said Board of Canvassers and Registration of Pawtucket by Hugh J. Carroll, a citizen and tax payer of said Pawtucket, a copy of which is herewith filed, marked Petitioner's Exhibit No. 3.

"All of which acts of said assessors of taxes and of said board of canvassers and registration are of record and fully appear in the records to be adduced and exhibited herein.

"Your petitioner therefore represents and shows that said assessors of taxes had no jurisdiction to assess said persons for personal property in manner and form as hereinbefore set forth; and that said board of canvassers and registration had no jurisdiction to place said names of said personal property taxpayers on said voting lists; and the acts of said assessors of taxes and the records thereof, and the said acts of said board of canvassers and registration and the records thereof are erroneous and illegal in the several particulars and for the several reasons which are recited and annexed to this petition and made a part hereof, upon which your petitioner will rely for its support.

"Wherefore your petitioner prays this honorable court to issue its writ of certiorari ordering said Assessors of taxes and said board of canvassers and registration severally to certify their several records relative to the assessment of said personal property taxes, and relative to the placing of said names set forth in Relator's Exhibit No. 2, on said voting lists, that they may be presented to this Court; to the end that the same, or so much thereof as may be illegal may be quashed.

"And your petitioner also prays that said J. Ellis White, city treasurer and collector of taxes, be ordered to produce to this court any tax roll and records for the year A. D. 1911, that may have been placed in his hands relating to said assessment for the year A. D. 1911, to the same end.

'And your petitioner further prays that a citation issue to said assessors of taxes and to said board of canvassers and registration and to said White, commanding them to appear and show cause, if any they have, why said writ shall not issue.

"WM. B. GREENOUGH,<br>"<i>Attorney General.</i>"

## "CAUSES OF ERROR.

"I.  .  .  .  Because the notice of said Assessors of taxes requiring accounts to be brought in is not definite as to whether said accounts should contain a statement of the ratable estate owned on any certain day excepting the day on which such accounts are brought in between the 20th and the 30th days of June, inclusive.

"II.  .  .  .  Because said notice permits different persons to return their accounts on different days and to place values thereon on different days.  A person owning property on the 19th of June may sell the same before the 30th of June and, on that last day bring in his account showing that he has disposed of it.

"III.  .  .  .  Because the records of said assessors do not distinguish those who have made returns from those who have not.

"IV.  .  .  .  Because said records do not describe or specify the kind, nature or species of the personal property which has been assessed against the persons named in the exhibits filed.

"V.  .  .  .  Because the records of said assessment of said personal property not having described the same so as to be capable of identification, the collector of taxes cannot distrain the same, nor levy upon the same; nor can the owner or a purchaser tell what is to be sold.

"VI.  .  .  .  Because said assessors and their records discriminate between real estate and personal property owners in this, that the personal property assessed against said persons has not been described, located or named, and, hence, cannot be levied on for sale, while the real estate assessed has been described and can be located and levied on and sold. Thus compelling real estate owners to pay money without due process of law.

"7.  .  .  .  Because so many persons aforesaid have been assessed for the peculiar and particular sums of two hundred dollars and one hundred and forty dollars, respectively, it is

evident that said assessors used no lawful method to ascertain what property such persons owned if any, but assessed them so that they might be able to vote in the election of the city council of said Pawtucket.

"8. . . . Because said board of canvassers and registration had no jurisdiction to place the names of said persons so assessed for two hundred dollars and one hundred and forty dollars, respectively, upon said voting lists, such persons not having been legally assessed for personal property owned by them; nor for any personal property.

" H. J. CARROLL,
" Sol. for Relator.

Upon the filing thereof a citation was ordered issued to the said respondents requiring them to appear before the court to show cause why the prayer of said petition should not be granted. Whereupon the respondents appeared and filed the following motion to dismiss said petition:

"And now appear the said respondents in said cause and move the court that said application for writ of certiorari may be dismissed:

"FIRST: Because it appears that the said notice by said Assessors of Taxes requiring accounts to be brought in as set up in said application and the exhibits attached thereto is in accordance with the provisions of the statutes in such cases provided.

"SECOND: Because said list complained of in said application and so as aforesaid certified to said city treasurer is fully in accordance with the provisions of Section 24 of Chapter 58 of the General Laws of Rhode Island.

"THIRD: Because it does not appear in and by said application for said writ that any illegal list other than a copy of the tax assessment of said city was delivered to said Board of Canvassers and Registration by said Tax Assessors.

"FOURTH: Because it does not appear in and by said application for a writ that said Board of Assessors have in any way exceeded the jurisdiction vested in them by the pro-

visions of the statute by anything contained in said application, and especially in the provisions of the tenth paragraph thereof.

"FIFTH: Because it does not appear by said application, particularly by the tenth paragraph thereof, that said Board of Canvassers and Registration have in any way exceeded their authority by placing any names, and particularly in placing the number of names alleged to have been placed by the tenth paragraph of said application, upon the list of persons entitled to vote at the election to be held on the 7th day of November, 1911."

The following is a copy of the Assessors' notice filed by the petitioner and marked "Relator's Exhibit No. 1."

"City of Pawtucket.

"CITY TAX

"Assessors' Notice.

"Whereas, the City Council of the city of Pawtucket, by a joint resolution approved May 15th, A. D. 1911, has ordered a tax on the inhabitants and ratable property in said city of one dollar and sixty-five cents on each one hundred dollars of the value thereof to be assessed and apportioned on the nineteenth day of June, A. D. 1911, at 5:00 o'clock p. m., and the undersigned have also prescribed said time for the assessment of said tax.

"Now, therefore, notice is hereby given that in accordance with said resolution and in conformity with the law in relation to the assessment of taxes, every person, copartnership and body corporate liable to taxation is required to bring in to the Assessors of Taxes a true and exact account of all his or their ratable estate, describing and specifying the value of every parcel of his or their real and personal estate.

"For the purpose of receiving such accounts the Board of Assessors will be in session in their office in room No. 103, Masonic Temple building, 55 High street, in said city, daily from the twentieth day of June to the thirtieth day of June,

A. D. 1911, inclusive, Sundays excepted, from 2:00 o'clock until 5:00 o'clock p. m., except Saturdays, when they will be in session from 9:00 o'clock a. m. until 12:00 o'clock m.

"General Laws of Rhode Island, Chapter 58, Section 7:

" 'Every person bringing in any such account shall make oath before some one of the assessors that the account by him exhibited contains, to the best of his knowledge and belief, a true and full account and valuation of all his ratable estate, and whoever neglects or refuses to bring in such account if overtaxed, shall have no remedy therefor.'

"All real and personal estate will be taxed to the persons, copartnerships or bodies corporate who own or hold the same at 5:00 o'clock p. m., on said nineteenth day of June, A. D. 1911.

"FREDERICK G. DANIELS,<br>
"CHARLES M. READ,<br>
"CHARLES R. BUCKLIN.<br>
"*Assessors of Taxes,*

"Pawtucket, R. I., May 15th, 1911."

An inspection of the foregoing discloses the fact that in the preamble thereof public notice is given that the nineteenth day of June, 1911, at 5 o'clock p. m., has been selected by the city council and by the assessors of taxes of said city as the day and hour for the assessment of said tax. Also in the concluding paragraph of the notice it appears that all ratable estates will be taxed to the persons, copartnerships or bodies corporate who own or hold the same at 5 o'clock p. m. on said nineteenth day of June, 1911. There is nothing in the notice that is ambiguous or doubtful. The day and hour are set forth clearly and concisely and no one would be likely to be misled thereby. It is perfectly apparent that the true and exact accounts of the ratable estates to be brought into the assessors must relate to the nineteenth day of June, 1911, at 5 o'clock p. m. For these reasons the first and second causes of error are baseless.

The third cause of error is based upon an allegation con-

tained in the eleventh paragraph of the petition which is argumentative; it recites: "that said assessors have not distinguished on their said lists of assessments those who have rendered an account of their personal property from those who have not." It nowhere appears in said petition that any person rendered an account of his personal property to the assessors of the city of Pawtucket for the year 1911. For this reason the objection has no merit. Said paragraph "XI" also contains the various criticisms of the assessment complained of in the fourth and fifth causes of error, for example: that it does not show what the personal property assessed consists of; that it is not described or specified; and that the collector of taxes cannot levy upon, advertise and sell the same in default of the payment of such tax while the real estate assessed can be located and levied upon. What the assessment does not show is set forth at some length, but what it does contain does not appear. This is not a proceeding brought, by a person against whom a personal property tax has been assessed, for the purpose of objecting to the assessment on the ground of its illegality. Nor is the collector of taxes complaining that he is unable to identify the property and therefore cannot distrain or levy upon the same. For these reasons the fourth and fifth causes of error have no validity.

The sixth cause of error is founded upon a supposed discrimination created by the assessors of taxes between real estate and personal property owners in favor of the latter, by which real estate can be located and sold for taxes more readily than personal property, with the result that real estate owners are compelled to pay money without due process of law. One of the chief characteristics of real estate is its stability or immobility, while that of personal property is its mobility or the ease with which it may be delivered or transported from one person or place to another. These fundamental differences cannot be affected by any policy that may be adopted by the assessors of taxes under the statute aforesaid. The taxing of personal property does

not operate to immobilize it, and it may often happen that personal property assessed to one person will be sold and delivered to another long before the tax assessed upon it is due and payable. So that no matter how carefully it may have been described for the purposes of identification at the time of the assessment its absence may effectually prevent the collector of taxes from making any distraint or levy thereon. The injury, if any there be, suffered by the owners of real estate in consequence of the inherent differences between the said estates cannot with propriety be attributed to the assessors of taxes. We see no merit in this claim.

(5)   The seventh alleged cause of error is based upon a contention diametrically opposed to the sixth, for the claim is that the persons therein referred to were so assessed in order to enable them to vote, but as the right to vote is conditioned upon the payment of the tax it is manifest that in order to make the plan successful the tax must be paid and in case of such payment the real estate owners will be spared the loss which the petitioner was afraid might accrue to them in consequence of the nonpayment of the tax assessed. However, it is not necessary that the claims should be consistent. The charge is that the assessors used no lawful method to ascertain what property the persons assessed owned, if any, but merely assessed them in order to enable them to vote in the election of the city council of said Pawtucket. This is an inference drawn from the fact that so many persons have been assessed for the peculiar and particular sums of two hundred dollars and one hundred and forty dollars, respectively. The assessors of taxes are sworn officers of the law, and are entitled to the presumption that their official acts have been properly performed, until the contrary is proved: "*Omnia praesumuntur rite et solenniter esse acta donec probatur in contrarium.*" However, no proof is offered to the contrary. In these circumstances, the maxim must govern. Furthermore, the presumption of innocence would be sufficient in the premises. These considerations lead us to the conclusion that there is no merit in this claim.

As the eighth cause of error, viz., lack of jurisdiction of the board of canvassers and registration in the premises, depends upon illegal action on the part of the assessors of taxes in making the assessment aforesaid, it is manifest that if the action of the assessors therein was legal there is no error to complain of. As we have already said there is nothing to overcome the presumption of legality and therefore this claim must fall with the rest.

The motion to dismiss is therefore granted.

*Hugh J. Carroll,* for petitioner.

*Edward W. Blodgett,* for respondents.

*Edward D. Bassett,* of counsel.