259 A.2d 839.
IN RE PETITION OF JOHN A. NELSON AND
PETER W. THOMS.

DECEMBER 19, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

PER CURIAM. This is a petition brought by the above-named individuals to review rulings of the Board of Bar Examiners relative to the aforesaid individuals' applications for permission to take the bar examination to be given on September 25 and 26, 1969, and seeking to have said rulings, which were adverse to the petitioners, reversed.

The record establishes that on September 2, 1969, both Nelson and Thoms filed separate applications as required by Rule 1 of the Rules of the Supreme Court. It provides in pertinent part:

"1. *Admission on Examination*: Every person applying for admission to the bar upon examination shall file a written application, under oath, in the clerk's office and shall satisfy the board of bar examiners that:
* * *

"(c) If admitted, he intends to practice law in this state * * *."

Rule 3 of said Supreme Court Rules provides that at least ten days prior to examination, the Board shall cause the names of all applicants to be published in a legal notice or news story in a daily newspaper of general circulation in this state. Although not established by the record before us, there is a legal presumption that the Board complied with the requirement of Rule 3 and caused the names of applicants Nelson and Thoms to be published in the manner prescribed. *Olson* v. *Zoning Board of Review,* 96 R. I. 1, 188 A.2d 367; *Greenough, ex rel.* v. *Board of Canvassers,* 33 R. I. 559, 82 A. 406.

In any event, petitioners were called to appear before the Board on September 19, 1969, at which time they were questioned regarding their intentions to practice law in this state, if admitted. Whether this questioning arose out of information received by the Board as a result of the publication of petitioners' applications, or resulted from information otherwise acquired, is not made clear by the record. What is clear, however, is that both Nelson and Thoms were residents of this state less than one month prior to filing their applications and that they came to Rhode Island to accept engagements with The Rhode Island Legal Services, Inc., a federally sponsored program providing legal services to the poor.

It further appears that both petitioners were engaged by The Rhode Island Legal Services, Inc., as a consequence of their having received fellowship grants from the Reginald Heber Smith Fellowship, a foundation administered by the University of Pennsylvania Law School. A fellowship recipient is free to choose which of the 250 legal service programs located in divers regions of the country with which he wishes to be affiliated, and is assigned accordingly. Compensation for the work performed on behalf of the particular

legal service program with which a Smith Fellowship recipient becomes associated is made by the Smith Fellowship program but, at least with regard to the instant petitioners, all other terms of employment are within the control of The Rhode Island Legal Services, Inc. One such condition having significance here is that petitioners' engagement with The Rhode Island Legal Services, Inc. was for a period of one year. Also having significance is the fact that petitioner Nelson's application discloses he was admitted to the practice of law in Indiana in October 1968, and that of petitioner Thoms discloses that he had been admitted to the practice of law in Connecticut in September 1968.

It was against the background of the foregoing information that the Board questioned petitioners regarding their intent to practice law in this state, if admitted. No transcript was made of the September 19th hearing and the only record bearing thereon is to be found in a summation of the Board's findings as set forth in a written communication from their secretary to this court. Their summation is as follows:

> "In one instance the applicant said his present intention was that he would probably not locate a law practice here but there was a possibility that he might do so. Another of the applicants stated that he didn't have any specific intention to locate in any particular jurisdiction and that he might practice here."

On the basis of these findings, the Board concluded that petitioners had not established that they, if admitted, intended to practice law in this state within the meaning of Rule 1(c) of the rules of this court.

Having made this determination, the Board denied petitioners' applications and they were so notified. Thereafter, specifically on September 23, 1969, Nelson and Thoms filed the instant petition in this court. Attached to said petition were affidavits of both Nelson and Thoms, in each of which

the respective petitioner states categorically that at the September 19th hearing he informed the Board that it was his intention to practice law in this state, if admitted.

Since the examination for which the applications were filed would commence two days hence, we gave immediate consideration to the instant petition on the day it was filed, and on that day, September 23, 1969, instructed the Board of Bar Examiners to permit petitioners to take said examination without prejudice, however, "to any of the parties hereto on the merits of the written petitions which shall be heard by this Court in due course." We adopted this procedure in order to give petitioners, or either of them, the benefit to be realized on a successful passing of said examination should they, or either of them, ultimately prevail on the merits of their petition to review the adverse ruling of the Board.

Subsequently, in furtherance of our September 23rd order, the instant petition was assigned for oral arguments to and was heard on December 1, 1969. In connection, therewith, a brief was filed by petitioners, but not by the Board. The members thereof appeared, not as adversaries in a strict sense, but in their court-appointed capacity for the purpose of being of such assistance as the court might require in explanation of their findings and resulting denial of petitioners' applications.

In their oral arguments and brief, petitioners concede that the scope of the provision of Rule 1(c) namely, "if admitted, he intends to practice law in this state" is the essential issue before this court. There are, however, they point out in their brief, two areas of construction of Rule 1(c), either of which might have been determinative of the Board's decision that petitioners had failed to qualify within the meaning of the rule. The ruling of the Board, however, they further argue in their brief, fails to indicate by which of said two constructions the Board found that petitioners

failed to meet the requirement of the rule in question. In any event, it is petitioners' contention the Board misconceived the intendment of Rule 1(c).

The first area of construction regarding the applicable rule, as emphasized by petitioners, is that the Board, addressing its attention to the word "practice" in Rule 1(c), may have concluded that the limited practice attaching their association with The Rhode Island Legal Services, Inc., contemplated by petitioners' employment was not the general practice of law envisioned by the average candidate for admission to the bar. If this were the basis for the Board's denial of petitoners' applications, the argument is made that the Board's conclusion is contrary to the holding of this court in *In re Petitions of Jackson and Shields*, 95 R. I. 393, 187 A.2d 536. There petitioners were seeking to be admitted on motion, but, petitioners urge, the reasoning in the cited case is equally applicable to an application for permission to take a bar examination. We agree.

In *Jackson and Shields, supra,* we held that "general practice" encompasses all the manifold activities of a legal nature that inhere in those consequences of human relationships recognized by the law. We further went on to say that the contemplation of such practice depends on whether the legal action in which he engaged was for the purpose of adjusting conflicts of interests or terminating litigation generated by and relevant to at least one of the human relationships of which the law takes cognizance.

We think it evident that the legal services for the performance of which the instant petitioners became associated with The Rhode Island Legal Services, Inc., contemplate the practice of law within the meaning of Rule 1(c) of the Rules of the Supreme Court.

The second area of construction pointed out by petitioners in their brief involves the nature and duration of the intention to practice in this state that an applicant must

have to be eligible to take the bar examination. If it were on this ground that the Board found petitioners ineligible then, it is their position, the Board's concept of the requirement of "intent" misconceives the thrust of the purpose to be served by the rule.

When the petition came on to be heard orally, the Board, speaking through its chairman, made clear that the conclusion reached by the Board was not based on any question of the nature of the practice which petitioners would pursue on behalf of The Rhode Island Legal Services, Inc. Rather, he emphasized that it was based on petitioners' uncertainty regarding a practice in this state other than that for the period of time for which they had been engaged to be associated with the agency in question. Failing to be definite in this regard, the Board concluded, petitioners did not possess the "intent" contemplated by this court in enacting Rule 1(c).

Rules governing admission to the practice of law in this state are adopted by this court pursuant to G. L. 1956, §8-1-2, enacted in implementation of the inherent judicial power. *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n*, 55 R. I. 122, 179 A. 139. In furtherance of effectuating rules so adopted, this court appoints a Board of Bar Examiners to act as its agent, in the first instance, in determining the eligibility of applicants for the bar examination and, by the very nature of things, the duty thus imposed vests the Board with authority to examine applicants regarding eligibility under the rules and make a factual determination in light of the rules as the Board interprets them. See *In re Petitions of Jackson and Shields, supra.* Consequently, we recognize that there may be instances when the Board will be doubtful and, in deference to a final right of liberality of construction by this court, resolve such doubts against one whose factual status sets him apart from the usual applicant.

With regard to the instant petition, we are persuaded that the Board's interpretation of Rule 1(c) as the same applies to an applicant's intention is more restrictive of an applicant's eligibility than was contemplated by this court when adopting the rule in question. Contrary to the Board's conception, the intention contemplated by the rule requires an applicant to demonstrate that his immediate purpose in taking the examination is to make the practice of law in this state his principal occupation, if successful, without regard to what the future may offer. Thus, where, as here, the facts disclose that an applicant otherwise eligible is seeking to be admitted to the practice of law in this state for the purpose of providing legal services in association with a public or private agency by whom he has been engaged, he must be said to have the intention envisioned by the rule.

It is of materiality to refer again to *In re Jackson and Shields*. There, both petitioners had applied to the Board for admission without examination as provided by now Rule 2 of the Rules of the Supreme Court. The sole question presented by their appeals to this court, from the denial of their motions by the Board, was whether their respective specialized practices in other jurisdictions, for the ten years immediately preceding their applications, constituted the "general practice" required by the rule. The petitioner Jackson had, within the ten years next preceding his application, served as general counsel for the Boston & Maine Railroad and, from 1957 to 1961, was Assistant Secretary of the Navy, in which capacity his services as an attorney were of prime importance. Although not reported in the case, Jackson's petition disclosed that he was motivated to move for admission to the practice of law in this state by reason of his having accepted an engagement to serve as general counsel to a prominent Rhode Island manufacturing concern, namely, Fram Corporation. No ques-

tion was raised, nor, in our opinion, none could be raised as to whether Jackson, if admitted on motion, would continue with the practice of law in this state, were he at some subsequent time to terminate his employment with Fram. Hence, we perceive no basis in reason for distinguishing between an applicant for admission on motion by virtue of practice in some other jurisdiction and an applicant who seeks to take the bar examination.

It is our judgment therefore, that the instant petitioners satisfy the intent requirement of Rule 1(c), and, so holding, the cause is remanded to the Board of Bar Examiners for further proceedings in accordance herewith.

*Richard M. Borod, Harold E. Adams, Jr.*, for petitioners.

*Richard P. McMahon, Arthur H. Feiner*, for Board of Bar Examiners, respondents.