DECISION
Before this Court for decision are cross motions for summary judgment in this personal property tax appeal case. Jurisdiction is pursuant to section 44-5-26(b) of the General Laws of Rhode Island.
 Facts Travel
In May 2006, Spectrum Medical Leasing ("Spectrum") offered to lease[1]
to Rhode Island Hospital ("RIH") and The Miriam Hospital ("TMH") (collectively, "the Hospitals"), severally, approximately two thousand infusion pumps[2] ("Pumps" or "Equipment"). (Agreed Statement of Facts ("ASOF") ¶ 6.) The offer stated that "[l]essee will have title to the equipment; lease payment assumes Lessee is exempt from sales, use and property taxes." (ASOF ¶ 6.) Several months later, each of the Hospitals entered into an agreement ("Agreement")[3] entitled "Master Lease Agreement" with Spectrum. (ASOF ¶ 7.) Although the first twenty-seven paragraphs of the Agreement *Page 2 
constituted a form finance lease[4] agreement, paragraph twenty-eight of an addendum to the Agreement provided that "[n]otwithstanding anything in the Lease to the contrary, the parties agree that title to the Equipment shall transfer from Lessor to Lessee upon Lessee's acceptance of the Equipment." (ASOF ¶ 7.) A purchase option ("Purchase Option") provided that the Hospitals could purchase the Pumps at the end of the lease for one dollar. (ASOF exs. 6, 7.) The Purchase Option also stated that notwithstanding the Purchase Option, this transaction was a true lease. (ASOF exs. 6, 7, ¶ 3.) The Hospitals issued purchase orders on October 10, 2006 which stated, "[t]itle to the above equipment shall transfer to [the Hospitals] upon ([the Hospitals]'s) lessee's acceptance of the subject equipment." (ASOF ¶ 8.) After sending purchase orders, the Hospitals accepted delivery of the Pumps on December 13, 2006; February 22, 2007; and April 2, 2007. (ASOF ¶ 9.) U.C.C. financing statements were filed thereafter indicating that the Pumps were leased. (ASOF ex. 16, at 15:12-16:15.)
First Portland Corp.[5] ("FPC") filed a tangible tax report for 2007 with the Providence Tax Assessor's Office indicating that FPC owned the Pumps the Hospitals were leasing. (ASOF ¶ 10.) Thereafter, FPC filed an amended report stating that the Hospitals rather than FPC were the true owners, and that FPC was erroneously indicated in the earlier report as owner because of a computer error. (ASOF ¶ 10.) Notwithstanding the amended report, the Tax Assessor ("Assessor" or "Defendant") taxed FPC as the owner of the Pumps. (ASOF ¶ 11.) FPC, following the procedures set out in section 44-5-26(a), appealed to the Assessor, but its appeal was denied. (ASOF *Page 3 
¶ 12.) Thereafter, FPC timely appealed to the Providence Board of Tax Assessment Review ("Board"). (ASOF ¶ 12.) The Hospitals moved to intervene at the hearing before the Board. (ASOF ¶ 13.) While the Board allowed counsel for RIH and TMH to speak at the hearing, the Board took no official action with respect to the motion to intervene. (ASOF ¶ 14.) Ultimately, the Board denied the appeal. (ASOF ¶ 15.) FPC, RIH, and TMH (collectively, the "Plaintiffs") filed a complaint in this Court purporting to act pursuant to section 44-5-26(b).
 Standard of Review
"[T]ax assessors are entitled to a presumption that they have performed their acts properly until the contrary is proven." Harvard Pilgrim HealthCare of New Eng., Inc. v. Gelati, 865 A.2d 1028, 1035 (R.I. 2004) (citingWillow St. Assocs. LLP v. Bd. of Tax Assessment Review, 798 A.2d 896,899-900 (R.I. 2002)); see also Greenough ex rel. Carroll v. Bd. ofCanvassers and Registration, 33 R.I. 559, 571, 82 A. 406, 411 (1912) ("[t]he assessors of taxes are sworn officers of the law, and are entitled to the presumption that their official acts have been properly performed, until the contrary is proved. . . .").
 Discussion
As a preliminary matter, the Assessor argues that the Hospitals lack standing to appeal pursuant to section 44-5-26(b) because they were not taxed by the Assessor. The disputed tax here was assessed against FPC. However, because it is undisputed that FPC does have standing to challenge the taxes assessed against it, and because FPC is an *Page 4 
active plaintiff in this case, this Court will not address whether the Hospitals have standing.[6] Therefore, the sole issue in this case is whether FPC was improperly taxed.
FPC argues that it was improperly taxed because it did not possess title to the Pumps — it urges that title had passed to the Hospitals. The Assessor insists that FPC was properly taxed because the Hospitals did not possess title. Neither side disputes, and this Court finds, that the Pumps, if owned by the Hospitals, are tax-exempt. Similarly, this Court finds that personal property leased to the Hospitals is nottax-exempt. In determining whether property is tax-exempt, the Supreme Court of Rhode Island does "not look beyond the formal title to the property to determine its tax-exempt status." Fleet Credit Corp. v.Frazier, 726 A.2d 452, 456 (R.I. 1999) (citing Roger Williams Gen. Hosp.v. Littler, 566 A.2d 948, 950 (R.I. 1989)). Therefore, the dispositive issue is whether formal title had passed to the Hospitals when the tax was assessed.
The Plaintiffs argue that title had passed to the Hospitals at the time of the tax assessment because the original offer to lease, paragraph twenty-eight of the Agreement, and the purchase order state that title would pass to the Hospitals upon acceptance of the Pumps. The Defendant argues that title did not pass to the Hospitals because every provision of the Agreement except paragraph twenty-eight supports the conclusion that title did not pass to the Hospitals upon acceptance. Furthermore, the Defendant argues that title had not passed to the Hospitals at the relevant time because the UCC financing statements, which were filed in connection with the underlying transactions, indicated to the world that the transactions were true leases. *Page 5 
To determine if and when formal title passed to the Hospitals, this Court must determine whether the transaction that was in the "form of a lease" was in fact a true lease or a sale with a reserved security interest. In determining whether a transaction is a true lease or a sale, this Court is guided by section 6A-1-203. See Moden v. StarrResearch Dev. Corp., No. PM-86-1717, 1987 WL 859632, at *2 (R.I.Super.Ct. Apr. 14, 1987) (relying on G.L. 1956 § 6A-1-201(37) to distinguish between lease and sale). Section 6A-1-203 in pertinent part reads:
 (a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
 (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
 (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
 (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
 (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
 (4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement. (Emphasis added).
The first part of the test contained in subparagraph (b) is satisfied because the consideration that the lessee was to pay the lessor for the right to possession and use of *Page 6 
the goods was an obligation for the term of the lease. See § 6A-1-203. Here, the Hospitals were obligated to pay rent for the entire term of the Agreement. (ASOF exs. 6, 7, Agreement ¶ 2.) The second part of the test — that the lessee not be allowed to terminate his obligation to pay rent — is satisfied because the Agreement states that "[t]his Lease is irrevocable by Lessee for the full term of any Schedule and for the aggregate rentals provided therein." (ASOF exs. 6, 7, Agreement ¶ 1.)
With two of the conditions satisfied, the issue becomes whether any of the four clauses contained in subparagraph (b) are met. At first glance it appears that section 6A-1-203(b)(4) — "the lessee has an option to become the owner of the goods for . . . nominal additional consideration upon compliance with the lease agreement" — has been met. Indeed, the Agreement contains a Purchase Option which provides that the Hospitals may purchase the Pumps at the end of the Agreement for one dollar. While it would appear that the provisions of (b)(4) have been met, thus creating a security interest, paragraph three of the Purchase Option provides that "regardless of the purchase option issued, the lease covered by this option should be construed as a true lease, and under no circumstances is it to be considered as a conditional sales contract" [i.e., a security agreement]. Given this clear and unambiguous language, this Court refuses to find that the final prong has been met. Accordingly, this Court finds that the transactions were true leases. Because these transactions were true leases, formal title had not passed to the Hospitals when the Pumps were assessed. See Roger Williams Gen.Hosp. v. Littler, 566 A.2d 948 (R.I. 1989) (holding that property leased to tax-exempt hospital could be taxed); see also Fleet Credit Corp. v.Frazier, 726 A.2d 452, 456 (R.I. 1999). *Page 7 
Furthermore, it bears repeating that there is a presumption that the Assessor properly taxed FPC. See Harvard Pilgrim Health Care of NewEng., Inc. v. Gelati, 865 A.2d 1028, 1035 (R.I. 2004) (citing Willow St.Assocs. LLP v. Bd. of Tax Assessment Review, 798 A.2d 896, 899-900 (R.I. 2002)). Due to the fact that the Agreement, the addendum, and the purchase option are replete with contradictions and ambiguities, this Court finds that the Plaintiffs have failed to overcome the presumption that the Assessor was correct. This Court finds that the Plaintiffs have not proven that formal title passed to the Hospitals upon delivery. Finally, in reaching its conclusion, this Court relies on the fact that the U.C.C. financing statements indicated that the transactions were true leases. Accordingly, this Court denies the Plaintiffs' appeal.
Essentially, the Plaintiffs attempted to create a lease in which title passed to the lessee. However, it is axiomatic that lessees do not hold title. Merely inserting one provision stating that title passes to the Hospitals does not convert a lease into a sale. This Court would be favoring form over substance if it were to so find. If the Hospitals wish to be exempted from paying property taxes on account of the Pumps (either directly or indirectly), which of course they do, then they ought to structure a transaction which substantively (rather than by a mere conclusory statement) vests title in them.
 Conclusion
This Court denies the Plaintiffs' motion for summary judgment, and grants the Defendant's cross-motion for summary judgment.
Counsel for the Tax Assessor shall submit an order and judgment to be settled upon notice.
[1] Although the term "lease" is used throughout the parties' papers and this Decision, the pivotal issue in this case is whether the parties entered into a true lease or a security agreement. Therefore, the use of the term "lease" in this Decision is not dispositive of the issue.
[2] An infusion pump is used routinely in hospitals to inject (or infuse) saline solution and/or to administer drugs for various disorders.
[3] Because the agreements are identical in all material respects, reference to one agreement includes both.
[4] "Although it is a financing device like a security agreement, the finance lease is considered by the Code to be a true lease despite its financing characteristics." 2 White Summers, U.C.C. § 13-3 (5th ed. 2008).
[5] First Portland Corp., a subsidiary of IFC Credit Corp. ("IFC"), funds and reports property tax returns. (ASOF ¶ 1.) Spectrum is a division of IFC. (ASOF ¶ 7.)
[6] Pursuant to the Agreement, the Hospitals "shall pay all . . . sales/use taxes [and] personal property taxes . . . whether assessed to Lessor or Lessee. . . ." (ASOF exs. 6, 7, Agreement ¶ 8.) If this Court determines that FPC properly paid the tax, FPC will likely allege that the Hospitals should be ultimately responsible to pay the tax pursuant to the preceding lease provision. This would militate in favor of the Hospitals having a concrete stake in the outcome, or standing. *Page 1