ARTHUR E. MARLEY *vs.* PROVIDENCE JOURNAL COMPANY.

JULY 30, 1957.

PRESENT: Flynn, C. J., Condon, Andrews and Paolino, JJ.

PAOLINO, J. This action of trespass on the case for libel was tried before a jury in the superior court and resulted in a verdict for the plaintiff in the sum of $40,000. The defendant's motion for a new trial was granted unless the plaintiff filed a remittitur of all of the verdict in excess of $25,000. He filed such remittitur and the case is before us on the defendant's exceptions to the denial of its motion for an unconditional new trial, to rulings on evidence, and to the charge of the court. The defendant has filed sixty-five exceptions. However, we shall consider only those exceptions which it has briefed and argued. Under our well-established rule all other exceptions are deemed to be waived.

The plaintiff had been employed by the department of social welfare of the state of Rhode Island as superintendent of the Rhode Island Training School for Boys from 1935 to 1939 and from 1941 to July 12, 1951. The director of the department of social welfare removed him from that office on July 12, 1951. The defendant corporation is the publisher and owner of two daily newspapers in Providence, The Evening Bulletin and The Providence Journal, both of which have a general circulation in the state.

The plaintiff's declaration, which is in one count, in substance alleges that defendant "maliciously intending to injure the plaintiff, and to bring him into public scandal and disgrace" published in its newspapers certain articles which are defamatory and false and caused damage to him. These

articles, which were published on July 11 and 12, 1951, related to plaintiff's conduct in office, his management of the school, and his removal from office by the director of social welfare.

The article published on July 11 in The Evening Bulletin contained two stories, one of which dealt with a statement attributed to the director of social welfare that plaintiff would be removed from office because of "additional evidence of maladministration and improper use of the canteen fund * * *." This article related details of certain transactions involving expenditures from the "canteen fund." From the story in said article it appeared that plaintiff had used the fund in part for his personal gain and advantage.

The second story was based on an affidavit given to defendant by James Read, a former employee of the school, in which he charged plaintiff with having struck and beaten inmates of the school in violation of a regulation prohibiting the infliction of corporal punishment. In this story Read was quoted with respect to specific instances in which he charged plaintiff with having struck and beaten boys and with having permitted other employees of the school to strike and beat them in his presence.

On the following day, July 12, 1951, an article containing two stories of similar substance and import were published in The Providence Journal, the defendant's morning newspaper. It is not disputed that the articles published on July 11 and 12, 1951, which are the basis of plaintiff's claim of libel, were published of and concerning plaintiff.

In addition to the plea of the general issue, defendant also filed pleas of "fair comment," "privilege," and "truth." And in accordance with the provisions of general laws 1938, chapter 520, § 2, defendant also filed notice that it would prove the truth of the publications charged as libelous.

At the conclusion of the trial the jury returned a verdict for plaintiff, assessed damages in the sum of $40,000, and further made special findings of fact in answer to four ques-

tions propounded by defendant. In reply to such questions the jury found specially that the facts stated in the two articles published by defendant in The Evening Bulletin of July 11, 1951, and the two articles in The Providence Journal of July 12, 1951, were not substantially true and correct; that prior to the publication of said articles, defendant did not make reasonable investigation to discover the truth of the facts as stated in said articles; that defendant did not have reasonable and probable grounds to believe the truth of the facts stated in the articles; and, finally, that the jury replied "Yes" in answer to the fourth question, namely: "In publishing the articles in its newspapers on July 11 and 12, 1951, did the defendant or any of its employees have any actual malice toward the plaintiff?"

The defendant filed a motion for a new trial which was based on the grounds that the verdict was against the law, the evidence and the weight thereof; that the damages awarded were excessive; and on the ground of newly-discovered evidence which latter ground defendant expressly waived at the hearing on the motion. Thereafter the trial justice filed a rescript in which, after reviewing the evidence and the applicable law, he ordered a new trial unless plaintiff remitted all of the verdict in excess of $25,000. This the plaintiff has done.

The defendant thereupon prosecuted the instant bill of exceptions in which it contends that the trial justice erred in charging the jury on the question of punitive damages; that it committed reversible error in certain rulings on the admissibility of evidence; and that it erred in refusing to grant defendant a new trial unconditionally.

Exceptions numbered 60 and 61 relate to the trial justice's instructions to the jury upon the question of punitive damages. Upon this issue he instructed the jury, in part, as follows: "* * * where truth is pleaded as a defense, the truth of the libel is urged and found to be not true that that will sustain an award of punitive damages. In other

words, if the defense of truth fails, punitive damages may be awarded. Now, punitive damages are not a matter of right. The plaintiff is not entitled to recover punitive damages as a matter of right. Whether or not they are awarded is a matter which is entirely within your discretion * * *."

The defendant argues that the law as thus charged is too severe and that this court should adopt a rule which would not penalize a defendant who fails to prove the truth of the facts which constitute an alleged libel. There is a difference of opinion among legal authorities as to the effect of an unsustained plea of truth in an action of libel and slander. The defendant contends that the better view is that an unsustained plea of truth may be considered to be evidence of actual malice warranting the assessment of punitive damages only when it appears that the defense was made maliciously or in bad faith or with improper motives.

We do not agree with defendant's contentions on this issue. In *Kent* v. *Bongartz,* 15 R. I. 72, it was held that actual malice is not to be inferred from mere falsity. Later, in *Kenyon* v. *Cameron,* 17 R. I. 122, in effect it was further decided that failure to prove the truth did not result in an implication of malice so as to entitle a plaintiff to exemplary damages. In that case the court stated at page 125: "Awarding exemplary damages, in cases where they are allowable, is discretionary with the jury * * *. For the defendant to plead the truth when he cannot prove it may be evidence, but it is not conclusive evidence, of actual malice." And in *Tillinghast* v. *McLeod,* 17 R. I. 208, in denying defendant's petition for a new trial, we stated at page 212: "* * * the charge was serious, and might well distress him. The defendant reiterated it at the trial, and tried to prove its truth. Such an attempt, when it fails, may well be regarded by the jury as an aggravation of the wrong, and often as showing actual malice, warranting exemplary damages."

It is our opinion that in an action of libel or slander the plea of "truth" of itself constitutes a reaffirmation of the

libel or slander which, when not substantiated to the satisfaction of the jury, may be regarded by them as an aggravation of the wrong showing actual malice and warranting an award of punitive damages.. After carefully reading the pertinent instructions in the instant case, we are of the opinion that the trial justice followed the rule established in this state in actions for libel or slander, that if the defense of truth fails, punitive damages may be awarded in the discretion of the jury, notwithstanding the absence of specific evidence of malice other than the failure to prove the truth of the libelous statements. These exceptions are overruled.

The above rule rests in part, at least, upon the principle of the dignity of man and upon the right of the individual, be he private citizen or public official, to be protected from unwarranted libel or slander. However, it is equally a fundamental principle of our system of justice that a verdict based upon inadmissible evidence cannot be sustained where that evidence is of such a nature that it may well have prejudiced the jury to the detriment of the party against whom the verdict was returned. We shall therefore next consider defendant's exceptions to rulings of the trial justice relating to the admission of certain evidence, which had been duly objected to by defendant, in order to determine whether any of such rulings constituted prejudicial error.

Exceptions 9 and 10 relate to the admission in evidence, as plaintiff's exhibit 11, of an editorial entitled "Beware —The Pointing Finger" which was published in The Cranston Herald, a weekly newspaper in the city of Cranston, under date of July 19, 1951, and which had been written by its editor and publisher, Mrs. Rosalie Mary Frost. At the trial of the instant case in the superior court she subsequently testified as a witness for plaintiff. The editorial was offered by plaintiff for two purposes, namely, to show the scope and extent of publication of the alleged libelous statements and also as bearing upon the issue of the good faith and due care of defendant in verifying the information con-

tained in the articles in question. The trial justice admitted the editorial over the objection of defendant for the purpose of showing the scope and extent of publication of the alleged libel and also as opinion evidence of plaintiff's character and conduct in his position.

The defendant contends that the editorial in question was inadmissible on the following grounds: (1) that the statements contained in it were based on hearsay; (2) that it reflected the opinion or comments of a nonexpert witness; and (3) that the statements contained therein did not comply with the requirements of proof of character or reputation.

On the other hand plaintiff contends that the editorial is properly in evidence as proof of the extent of the publication of the alleged libel, and also as bearing upon the issue of defendant's due care in publishing or not retracting the alleged libel. He further argues in effect that, even assuming that the editorial was improperly admitted, nevertheless it was harmless error in view of the following facts: the jury's special findings, the trial justice's warning the jurors specifically that the editorial was not to be considered "evidence as probative showing the truth or falsity of the things that are said in it, in other words it's not to be used to prove its own contents," and his further warning that they were not to give it any additional weight because it was printed or in writing. Finally plaintiff argues that the editorial was but one of forty-two full exhibits which had been introduced in evidence by the parties with specific instructions upon their use by the jury and that it must be presumed that the jury did their duty in following these instructions.

After carefully considering the entire record we cannot agree with plaintiff's contention on this issue. The defendant's exceptions to the admission of the editorial in question specifically raise the issue of whether the special findings, as well as the general verdict of the jury, are based

upon legally competent evidence. In other words, the defendant contends, that the admission in evidence of this editorial constituted prejudicial error for the reason, among others, that the statements contained therein were based on hearsay relating to a material issue in the case.

Mrs. Frost testified in part that after the publication of the alleged libelous statements by defendant, she visited the school and talked to plaintiff about the articles in defendant's newspapers. Thereafter she, as owner, editor and publisher of The Cranston Herald, wrote the editorial in question, a copy of which we have appended to this opinion for a clearer understanding of the issue raised by its use as evidence.

It is undisputed that the editorial was full of praise for plaintiff and his conduct of the school and inferentially critical of defendant and its articles concerning plaintiff's conduct. By her own testimony, Mrs. Frost admitted that she took what plaintiff told her as the truth and that she based her editorial on what he had told her. It is clear, therefore, that the factual statements in the editorial were not based on the personal knowledge of Mrs. Frost but rather on statements made to her by plaintiff and other persons at the school.

There can be no doubt that it would have been error to permit the witness to testify orally as to the statements made to her by the plaintiff at the interview in question since such conversations were clearly hearsay and self-serving. It would equally have been error to permit her to testify to facts based on knowledge derived, wholly or substantially, from such statements. 31 C.J.S., Evidence, §200, p. 940. In view of the fact that the factual contents of the editorial were based substantially on knowledge gained from statements which were themselves inadmissible, it is our opinion that the trial justice erred in admitting it in the first place.

The question remains whether such error prejudiced the

defendant. It is well established that not every admission of improper evidence entitles an adverse party to a new trial as of course. But if it appears that the evidence objected to was material, in the sense that it probably influenced the verdict, the verdict should be set aside. *Ames & Payne* v. *Potter*, 7 R. I. 265, 269. Likewise where the admission of hearsay testimony may have had a controlling influence on a material aspect of the case, the error is one by which the losing party was prejudiced. *Havens* v. *R. I. Suburban Ry.*, 26 R. I. 48, 58.

In the instant case the subject matter of the editorial was material to one of the main issues in the case, namely, plaintiff's conduct as superintendent of the school and conditions there during his administration. On the record before us, we cannot be certain that on the question of liability the jury were not prejudiced by the admission of the editorial in finding defendant guilty of the libel as charged. However, Mrs. Frost, in connection with whose testimony the editorial was admitted, testified in cross-examination that there is a difference between the weekly press and the daily press. She also testified as follows: "I think we can't afford to go out and say things about people, we have no law firm in back of us to protect us, we have to be very very careful." Furthermore, she inferred vigorously that the "weekly press" is fairer than the "daily press" in the handling of its news reports and comments thereon.

After careful consideration, we are convinced that the admission of the editorial, especially in the atmosphere of such testimony, had a natural tendency to affect the fair-mindedness of the jury, probably as to liability and certainly insofar as the assessment of damages by them was concerned. It is therefore our opinion that the error in admitting the editorial was prejudicial to such an extent that only a new trial can cure it, especially since we are unable to say that the instructions of the trial justice removed the prejudicial nature of such error.

The defendant's exceptions 11 to 22 inclusive are based on its objections to the admission of testimony in cross-examination by one of its witnesses concerning a specific instance of failure to accord space in its newspapers to a public official desiring to reply to an adverse editorial. Exceptions 56, 57 and 58 are based on objections to the admission of testimony in rebuttal of one of plaintiff's witnesses concerning conditions at the school during the period from 1929 to 1937. We have carefully considered defendant's arguments in support of these exceptions and find them lacking in merit. Therefore, these exceptions are overruled.

In view of our opinion that the admission of The Cranston Herald editorial constituted prejudicial error, we deem it unnecessary to consider defendant's first exception to the denial of its motion for a new trial.

The defendant's ninth and tenth exceptions are sustained, and the case is remitted to the superior court for a new trial.

FLYNN, C. J., did not participate in the decision.

## APPENDIX

"Editorial

Beware—The Pointing Finger

After reading the sensational junk published about Mr. Arthur E. Marley and his supposed actions at the R. I. Training School we are inclined to believe God has his hands full.

*Photograph — Arthur E. Marley*

Mr. Marley has been accused of mismanagement. Yet those in power can only concentrate, and point their long fingers of injustice, at the supposed misuse of the canteen funds.

Only this remains the issue. Yet Mr. Marley has been publicised as a monster with insane tendencies. Still, his replacement rests with the canteen funds which might be classed with our petty cash box.

Anyone who knows Mr. Marley is fully aware of his love for children. It isn't too long ago that other com-

plaints were heard because the boys liked the Training School so much that the moment they got out they looked around for some reason to get back in again. The public were upset because it was too much like a vacation for those in the school.

Mr. Marley unfortunately raised the wrath of his officials when he found a milk shortage in the R. I. Training School. He demanded that the boys get their share of milk each day. He was suspended for his efforts.

According to one of the top-kicks, complaints have come from the Training Schools kitchen mechanics that Mr. Marley shoveled too much food into the mouths of the growing lads and they had told Mr. Marley time and again not to order so much. Oh, yes! We have an uncontrolled monster in Mr. Marley.

In thirteen months—now we all can count—thirteen months is a year and a month, but it sounds better since it includes a duplicate expense which takes place each year, which without, would make the figure and the story sound ridiculous. Mr. Marley spent in the neighborhood of $300 and some odd dollars for trophies. That would mean two years' expenses for the tournaments.

But the trophies were ordered from Mr. Marley's jewelry firm which evidently means deviltry. We know of no one who does not buy from his firm when the opportunity arises, nor do we know of any person who would prefer doing business with a competitor. Political history proves business is usually given to some one who might at some time do a favor in return.

Does not Mr. Edward Reidy, Director of Social Welfare, include his children in jobs at the institutions? Is he wrong in favoring his own? Not at all, it is as natural as breathing. Then why the pointing finger of guilt?

A Mr. Read, whoever he is—and why he should wait to air his accusations a couple of years later—claims that Mr. Marley hauled off and punched an eleven year old boy. He was remarkable in the fact that he

was ever handy or conveniently so, when some boy was being supposedly poked, beaten up, or escaping.

Why then, did Mr. Read wait these years to make a report of this behavior? Didn't he care what happened to those poor children between the years of 1949 and 1951? How could he sleep nights knowing anything so insidious was being performed?

When the police make a capture they don't exactly kiss the culprit and put him to bed. What, we wonder would Mr. Read do—let them escape?

Well, the damage has been done now. A man's name and his family have been maligned and disgraced. We hope everyone is happy.

But that powerful pointing finger—it might you know, point at anyone of us. Justice is only as accurate as those who can honestly administer it. It too, can be misused—when it doesn't balance."

FLYNN, C. J. did not participate in the decision.

*Aram A. Arabian,* for plaintiff.

*Edwards & Angell, William H. Edwards, Edward F. Hindle, Beverly Glenn Long,* for defendant.