SOCONY-VACUUM OIL COMPANY, INCORPORATED *vs.* HAROLD V. FRENCH, *Tax Assessor.*

JUNE 26, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

8

ANDREWS, J.   This is a petition brought under what is now general laws 1956, §44-5-26, on the ground that the petitioner's real estate in the town of East Providence was assessed as of December 31, 1952 at 12 o'clock noon, the time appointed for the assessment of taxes, at a valuation in excess of its full and fair cash value and in excess of the valuation at which it was assessed on the last preceding assessment day.

The case was tried in the superior court before a justice thereof who rendered a decision for petitioner for $40,441.32 which represents an excessive taxation of $36,132.15 plus interest.   Both parties excepted to the decision and these exceptions together with numerous others taken to rulings in the course of the trial constitute their bills of exceptions.

Each party has briefed the other party's exceptions taken in the course of the trial, but save in one instance neither party has briefed or argued, at least in an identifiable way, its own such exceptions.   The respondent did brief his ex-

ception to the refusal of the trial justice to nonsuit petitioner and we will now dispose of that exception. It is well settled here that a defendant has no exception to the denial of his motion for a nonsuit. *Plainfield Realty Co.* v. *Salway*, 72 R. I. 503, 505. It is equally well settled that exceptions which are neither briefed nor argued are deemed to be waived. *Marley* v. *Providence Journal Company*, 86 R. I. 229, 134 A.2d 180.

This leaves only the exception of each party to the decision. Each party has unnecessarily broken up its single exception into several exceptions for which there is no statutory warrant. See *Blake* v. *Atlantic National Bank*, 33 R. I. 109, *Dunn Worsted Mills* v. *Allendale Worsted Mills*, 33 R. I. 115, and *Vaill* v. *McPhail*, 34 R. I. 361, 375. However, this court has consistently held that under an exception to the decision the excepting party may bring before it any error that inheres in that decision. *Memorial Hospital* v. *Woolf*, 86 R. I. 357, 134 A.2d 397, 399, and cases therein cited.

The petitioner owns and operates in the town of East Providence a large oil refining plant. Its property crosses the town from Narragansett Bay to the Massachusetts line and consists of 884.68 acres, approximately one tenth of the land area of the town. It is in one parcel. Besides its refinery, tank farms, office building, warehouses and the like, petitioner has docking facilities to receive and transport raw materials and finished products to all parts of the world. The New York, New Haven & Hartford Railroad also crosses its property near the bay and petitioner has a spur track connecting with this railroad which gives it rail access to the whole North American continent. Pawtucket avenue, a four-lane public highway, passes through the property. There are several easements on the property but there is no evidence that they have lessened its value appreciably.

At the beginning of the trial petitioner stated that it was confining its attack to six lots, namely, those numbered 1, 3, 4 and 6 on assessor's plat No. 47, and lots 1 and 2 on assessor's plat No. 67. The first four lots are to the east of Pawtucket avenue and the other two are between that avenue and the bay. They are contiguous and constitute about two thirds of the property.

The petitioner filed a sworn return and also paid the tax under protest. As was stated by the trial justice in his decision: "It will be useful at this stage to set forth a comparison of the values claimed in the return and the values assessed.

| | | Claimed values: | | Assessed values: | | |
|---|---|---|---|---|---|---|
| | | Land | Imp's | Total | Land | Imp's | Total |
| Plat 47 | Lot 1 | . . . | . . | $81,957 | $117,330 | $303,500 | $420,830 |
| " | 3 | . . . . | . . . . | 19,312 | 29,770 | 80,690 | 110,460 |
| " | 4 | . . . | . . . . | 114,067 | 133,935 | 412,435 | 546,370 |
| " | 6 | $975 | . . . . | 975 | 4,390 | . . . . | 4,390 |
| Plat 67 | " 1 | . . . | . . | 117,940 | 120,600 | 265,530 | 386,130 |
| " | 2 | . . . | . . . . | 1,262,262 | 157,320 | 4,615,670 | 4,772,990 |
| | Totals | $975 | | $1,596,513 | $563,345 | $5,677,825 | $6,241,170" |

The petitioner's own experts placed a total value upon these lots (land, buildings and improvements) of $3,354,870 —over twice the value given in the sworn return—which led the trial justice to remark that the return was "so much an understatement of value as to throw doubt upon the petitioner's whole case." We cannot say that he was clearly wrong in not accepting the evidence of the witness who swore to this return.

The petitioner's expert witnesses as to land values were John B. Carpenter and Arthur W. Drew. The former is sometimes referred to as the dean of real estate experts in this state and the latter is almost as well known. The total of Mr. Carpenter's values for the six lots, land only, was $630,080 and that of Mr. Drew was $591,930. The total assessment was only $563,345. One might think that petitioner would not complain of this result, but at the trial it contended that because respondent assessed at only 80 per

cent of the full and fair cash value, its figures not only should have been accepted but that the assessment should have been only 80 per cent of such amounts. In this way it built up its claim for a refund in the sum of $66,848.84.

There were a few old dwellings on the land in question but their value was relatively insignificant. The trial justice very properly rejected evidence of sales of similar property in the area saying: "The very existence of this industry on this area is, for dwelling house purposes, a value depressing factor. Were the industrial feature removed, certainly many of the sales of neighborhood property would have been at higher prices than were had in the presence of the depressing factor."

The petitioner's expert witnesses as to the special business structures and improvements were Stuart F. Kosters and Harold G. Bower, employees of Stone & Webster Engineering Corporation. The respondent's evidence came almost entirely from his expert witnesses Adrien Quillin and Henry J. Morris, of New England Surveys, Incorporated, a concern which has done considerable appraising for municipalities for tax purposes. These witnesses, representing such corporation, made a survey of the taxable property in the town of East Providence in the year 1952.

The petitioner's main attack upon the decision is that respondent's witnesses were so inferior to its witnesses that the trial justice should have accepted in toto the valuation the latter placed on the property. It makes no request for any sum less than its total claim with interest. It is true that Messrs. Quillin and Morris did not have as much education and experience in their field as Messrs. Kosters and Bower. The trial justice said: "They seemed to lack the courtroom dash, and to some extent, the self-confidence of the Stone & Webster men. However, their study was prolonged, careful, self-improving and rewarding." That the trier of the facts can accept the valuation of one set of ex-

perts and reject those of another set of experts cannot be questioned particularly when as here he gives good reasons for so doing. In *Bell Co. of R. I.* v. *Cote*, 84 R. I. 284, 289, 123 A.2d 400, 402, a proceeding like this, we upheld the trial justice in accepting Mr. Carpenter's valuations rather than those of the employee of another survey concern.

The petitioner argues that the reproduction cost less depreciation method adopted by respondent's experts was improper and should have been rejected. No evidence of comparable sales of any of the business structures was offered as independent evidence of value. See *Bell Co. of R. I.* v. *Cote, supra.* Messrs. Carpenter and Drew had knowledge of sales of such buildings which doubtless entered into their final figures. This simply added to their qualifications as experts. Mr. Quillin testified that he examined the facts of many sales in East Providence to enable him to adjust upward or downward the figures produced by the reproduction cost less depreciation method.

The final figure is the value of the land increased or decreased by the buildings and improvements thereon. *Hervey* v. *City of Providence*, 47 R. I. 378. The tax statute, however, requires that a separate figure be placed on the buildings and improvements. G. L. 1956, §44-5-20. Consequently, in cases like this the experts always make such a valuation and then add it to the value of the land. Since buildings are seldom sold separate from the land, we are of the opinion that consciously or unconsciously the experts use to a large extent the reproduction cost less depreciation method. In any event no exception raising this question specifically has been briefed or argued and it is not open to petitioner here. Furthermore, it is well settled that in valuing property like a refinery, the reproduction cost less depreciation method is admissible where there are no comparable sales. *Hall* v. *City of Providence*, 45 R. I. 167.

The petitioner made a strong argument that its asphalt plant was a liability without even junk value. It argued

that a new plant could be installed at a cost of $3,000,000 and that in a little more than three years by economy in operation the investment could be recovered. The trial justice said: "It is a curious argument to make to the Court that this petitioner wastes hundreds of thousands of dollars per year on this antique, oddly assembled plant, and yet continued to maintain and use that plant and to sustain such money loss. The Court does not accept this argument—for it is but an argument—based on opinion only. It is well known that one man can operate an enterprise and make a handsome profit. Should he sell that enterprise to another, that other in the very same plant might lose a fortune." Then after pointing out that the losses were intercompany transactions he concluded: "The fact that this company has continued the operation of this plant is in itself an assertion *by its own conduct* that its operation is desirable, and in its line desirable means profitable." Again we cannot say that the trial justice was wrong in rejecting testimony of petitioner's witness as to this item.

The petitioner argues that the trial justice was in error in saying that there was no decision of this court clearly defining the meaning of "full and fair cash value." It is true that he made what was perhaps a long excursion into the history of this phrase, but we are satisfied that what he meant was that the words "full and fair" added little to the old phrase of "actual value" since he said: "It is a puzzle to ascertain what modification of *actual* value was intended by the addition of the words 'full and fair'. An article appraised at its cash value would not be properly appraised at one-half its cash value nor at any other than its full value." In any event, there is nothing in his decision or in the transcript that indicates he followed the wrong rule of law.

After reviewing the evidence the trial justice found that the pipes and valves were the only items overassessed. It appears that when the respondent's witnesses appraised

these items they treated the refinery as a unit, as in fact it is, and then apportioned the pipes and valves to the various lots in proportion to the number of tanks that were located on the respective lots. However, the petitioner's experts testified that they measured the pipes and valves that were actually upon the individual lots. The trial justice stated in his decision that he would accept the measurements of petitioner's witness Kosters and would accept the pipe and valve values shown on respondent's "memorandum I." Pursuing, as he says, this method he found an overassessment on these items of $1,854,521.60. The petitioner argues that the trial justice did not adopt respondent's values but put his own values upon the pipes and valves, and in disposing of respondent's argument that the award to petitioner was improper said: "At the hearing in the court below the trial justice was sitting as a quasi tax assessor. It is apparent in the decision of the trial justice that although he referred to respondent's memorandum of values, he rejected the same *when he accorded to the petitioner the relief it sought relative to the assessor's valuation of its piping.* In determining mathematically the relief accorded to the petitioner the trial justice adopted his own valuation in relation to certain piping." (italics ours)

There is evidence in the record which tends to show that respondent's witnesses valued the pipe too high and that petitioner's witnesses ignored vast quantities of valves, but the trial justice in arriving at the value he found may well have balanced the excess with the omission. Since neither side has specifically asked us to go into these matters, we accept his finding as to the value of the pipe and valves.

The respondent takes the position that there was no overassessment. For the sake of his argument he accepts the values placed upon the pipes and valves by the trial justice but points out that such figure on each lot should have been subtracted from 80 per cent of the value placed upon

that item by his witness. In each case he shows no over-assessment.

The respondent takes lot 2 on assessor's plat No. 67 as an example. We use his figures. The total valuation placed upon that lot by respondent's experts, namely, land, buildings and improvements, is $5,966,235. In respondent's "memorandum I" referred to by the trial justice, the valuation placed by respondent's witness on the pipes and valves is $2,756,550, 80 per cent of which is $2,205,240. The trial justice found that the value of the pipes and valves on this lot was $1,012,404. The respondent subtracts the latter figures from the former giving a corrected excess valuation on pipes and valves of $1,192,836. The respondent then subtracts this figure from the first figure, $5,966,235. This leaves $4,773,399 but the actual assessment on this lot was only $4,772,990.

It is clear that the trial justice subtracted his pipe and valves valuation from the full valuation that respondent's expert put upon that item instead of from 80 per cent of that figure. In its main brief petitioner demonstrates that the assessment was only 80 per cent of the full and fair cash value placed upon the property by respondent's expert.

The petitioner declined to consider or analyze in any way respondent's figures, which we have just discussed, taking the position in its *reply* brief that there was no evidence that the assessment was 80 per cent of the full and fair cash value. This is its only answer to respondent's position except its original claim that the values of its experts should have been taken in toto. At the very beginning of the trial, petitioner's chief trial counsel stated: "Now in this connection, your Honor, these figures, both the Town and our figures, are based upon assessment of 80% of the value. * * * I think, that in valuing the property in East Providence, it is valued at 80% of its *full and fair cash value* as is done in many places." (italics ours) This statement

amounts to a judicial admission which takes the place of evidence.

In its main brief petitioner stated: "In practically all instances other than the pipe measurement and Mr. Kos- 'ters' valve appraisal on Plat 47 Lot 1, the court accepted the valuations as testified to by the witnesses for the re- spondent. In accepting mainly the appraisal of respond- ent's witnesses, the court accepted their reproduction costs less estimated depreciation *as the full and fair cash value of petitioner's property for the purpose of taxation.*" (ital- ics ours)

We have had considerable difficulty with the mass of fig- ures contained in five great volumes of testimony and a large number of exhibits. The petitioner had an oppor- tunity, of which it availed itself, of filing a reply brief in which as noted it declined to discuss the correctness of the respondent's figures which in effect was an admission that if his hypothesis, namely, the 80 per cent assessment, was correct, his figures based upon it were correct. Those fig- ures show no overassessment.

All of the petitioner's exceptions are overruled. The re- spondent's exception to the decision is sustained, and all of his other exceptions are overruled. The petitioner may appear before this court on July 7, 1958 to show cause, if any it has, why the case should not be remitted to the su- perior court with direction to enter a decision for the re- spondent for costs.

### ON HEARING TO SHOW CAUSE.

#### AUGUST 4, 1958.

PER CURIAM. In the above-entitled case, pursuant to our opinion heretofore filed, the petitioner through its attorney appeared to show cause why the case should not be remit- ted to the superior court with direction to enter judgment for the respondent for costs.

After careful consideration of its oral argument and memorandum, we are of the opinion that the petitioner has failed to show cause why our conclusions should be changed. Therefore the case is remitted to the superior court for entry of judgment for the respondent for costs.