NORTHGATE ASSOCIATES

v.

William H. SHOREY, Tax Assessor.

No. 86–480–Appeal.

Supreme Court of Rhode Island.

June 1, 1988.

Raymond A. LaFazia, Gunning, LaFazia & Gnys, Inc., Brenda Coville Harrigan, Palumbo, Galvin & Boyle, Providence, for plaintiff.

Michael W. Miller, Joseph B. Going, Going & Miller, Ltd., Newport, for defendant.

OPINION

KELLEHER, Justice.

On December 31, 1978, Northgate Associates (Northgate) owned an apartment complex, located in the town of Middletown, that had an assessed value of $1,169,-050. Sometime after the advent of 1979 the municipality embarked on a general reevaluation of all its ratable property. As a consequence, on December 31, 1979, Northgate's complex had an assessed value of $4,284,850. When Northgate received notice of this assessment, it filed suit in early December 1980 in the Superior Court for Newport County pursuant to the provisions of G.L. 1956 (1980 Reenactment) §§ 44–5–26 and –27.[1] The gist of its complaint was its claim that the assessment was far beyond the property's full and fair cash value. The controversy came on for a hearing in 1985. In the intervening years between the filing of its petition and the hearing, that is, 1980 through 1984, Northgate paid the annual taxes. The checks that were forwarded in payment contained the notation "under protest." The trial justice ruled that the 1979 assessment was excessive and ordered a refund. However, the trial justice refused to consider Northgate's claims for the years that intervened between the filing of its 1979 claim and the 1985 hearing.

In taking this position, the trial justice relied on the previous pronouncements of this court and the specific language of § 44–5–27, which states that the remedy provided by § 44–5–26 shall be the exclusive remedy for "any ratable estate at all." Long ago, in *Tripp v. Merchants' Mutual Fire Insurance Co.*, 12 R.I. 435, 436 (1879), our predecessors emphasized that whether a tax is faulted because of an overassessment or because of an alleged illegality, the taxing statute provides the exclusive remedy for anyone aggrieved by a

---

1. When this litigation was initiated, Brian J. Bullock was Middletown's tax assessor. Sometime during the pendency of this suit Mr. Bullock was succeeded by William H. Shorey who was then automatically substituted as a party pursuant to Super. R. Civ. P. 25(d).

N

municipal assessment. However, Northgate argues that § 44-5-26 should be construed so as to permit a single petition for relief to serve as a basis for a challenge to all the annual assessments with which it finds fault, particularly since the tax levied during the five years in question was based upon the 1979 assessment. Northgate describes the trial justice's refusal to consider all the contested assessments as glorifying form over substance and turning a remedial statute into a trap for the unwary. We disagree.

Northgate apparently overlooks the importance that the assessment process plays in the fiscal operation of the various municipalities located in this state. Real property taxation provides a significant source of municipal revenues,[2] and departmental appropriations are necessarily dependent on the funds available. The share that each taxpayer must contribute to support and sustain municipal services varies with the assessment placed on his, her, or its property. Thus, both the taxpayer and the municipality have an obvious interest in the amount and accuracy of the individual assessments. The municipality has an additional concern that disputes relative to an assessment be resolved as expeditiously as possible so that the tax roll may be finalized and the tax rate established. This concern has been shared with the Legislature. When enacting § 44-5-27, the General Assembly emphasized that a taxpayer's complaint is to be filed in the Superior Court "within three (3) months after the last day appointed for the payment" of such tax without penalty.

The tax collector's staff is under no obligation to examine each and every check it receives to determine if the taxpayer is paying the tax "under protest." For those who are seeking redress within the judicial system, there is but one recognized method of notifying the municipality of a taxpayer's displeasure with an assessment and that is through the issuance of a citation by a Superior Court clerk, the contents of which are explicitly set out in § 44-5-26.

It is obvious that the Legislature, in enacting § 44-5-27, recognized the necessity for finality in assessment disputes when it stated that the taxpayer's complaint was to be filed within three months of the last day specified for payment without a penalty of such tax. Since Northgate has not seen fit to seek relief pursuant to the statutory framework provided by the Legislature, its request for relief from the assessments made subsequent to the 1979 assessment cannot succeed.[3]

Consequently Northgate's appeal is denied and dismissed, and the judgment appealed from is affirmed.

2. In its 1987 annual report "Local Government Finances and Tax Equalization" the Rhode Island Department of Administration's Office of Municipal Affairs disclosed that in fiscal year 1986 the principal source of municipal income was the property tax collections that represented 60.8 percent of the total municipal revenues realized during that period.

3. It may be that Northgate overlooked another potential source of relief from the tax assessor's actions. Article 6, sec. 603, of Middletown's 1968 Charter has established a board of assessment review that is authorized to hear and consider a property owner's appeal concerning the

amount of the assessor's valuation. If the board believes that the valuation is erroneous or the property incorrectly assessed, the board has the authority to order a correction. In the event the tax roll has been certified by the assessor, the findings of the board are to be transmitted to the council, which is then authorized to cancel in whole or in part the tax based upon such valuation. Section 2-33 of art. V of the Middletown Town Code tracks some of the language found in G.L. 1956 (1980 Reenactment) § 44-5-27 because it specifies that all appeals are to be filed within ninety days of the last date of the payment of the tax without penalty.