**FERLAND CORPORATION et al.**

v.

**Arthur E. BOUCHARD, Jr., in his capacity as Tax Assessor of the City of Woonsocket.**

No. 92–548–A.

Supreme Court of Rhode Island.

June 16, 1993.

J. Robert Weisberger, Wistow & Barylick, Inc., Providence, for plaintiff.

Denise M. Auger, Cumberland, for defendant.

## OPINION

FAY, Chief Justice.

This case is before us on appeal by both the defendant and the plaintiffs from a judgment of the Superior Court. At issue are the tax assessments of two federally subsidized apartment complexes owned by the plaintiffs, Ferland Corporation, in its capacity as general partner of the Plaza Village Group, and Armand A. Ferland, in his capacity as general partner of the Walnut Hill Group.[1] The facts insofar as pertinent to this appeal are as follows.

In 1987 defendant, Arthur E. Bouchard, Jr., in his capacity as tax assessor of the city of Woonsocket (city), conducted a statutorily mandated revaluation of all real estate within its boundaries. See G.L.1956 (1988 Reenactment) § 44–5–11. Included among the properties revalued by the city were two parcels owned by plaintiff known as Plaza Village and Walnut Hill. The plaintiff contends that the city erred in assessing the fair-market value of these two properties. Pursuant to §§ 44–5–26 and 44–5–27, plaintiff filed six petitions for relief in the Superior Court challenging the tax assessment on these properties for the years 1988, 1989, 1990, and 1991. The plaintiff's six petitions were consolidated into two cases and presented for a nonjury trial. The trial justice found that the assessments exceeded the properties' fair-market value and ruled that plaintiff was entitled to a refund of its overpayments, plus interest and costs. The trial justice dismissed plaintiff's 1989 petition relative to Plaza Village, stating that the petition was not filed in a timely manner. Both plaintiff and defendant appeal from these judgments.

Because the valuation and the expert testimony regarding the fair-market value of both parcels differ, we shall consider each property separately.

### PLAZA VILLAGE

The first parcel, known as Plaza Village, is a 228–unit housing development consisting of nine residential buildings, five tenant-storage buildings, and a community building. These units are subsidized by the Department of Housing and Urban Development (HUD) pursuant to § 236 of the National Housing Act. See 12 U.S.C.A. § 1715z. As of December 31, 1987, and for the years 1988, 1989, 1990, and 1991, the city assessed the Plaza Village property at $7,042,795.[2] This valuation represented the uniform 75 percent of the fair-market value applied to all residential real estate in the city of Woonsocket.

---

1. Although the original captions name Armand A. Ferland as the plaintiff in several of the petitions, the parties seem to interchange Armand A. Ferland with the Ferland Corporation as the party-plaintiff. Therefore, all references herein to the plaintiff will be to the Ferland Corporation.

2. Pursuant to G.L.1956 (1988 Reenactment) § 44–5–1, valuations are assessed on December 31 of each year. The taxes are then apportioned accordingly and made payable to the city in July of the following year.

At trial the city presented Ralph Wilcox (Wilcox), supervisor for the city's 1987 revaluation project, as its only witness. Wilcox testified that his appraisal reports to the city were based on the "reproduction cost minus depreciation approach" (cost approach), a recognized method of appraising real property.[3] According to Wilcox, the cost approach is the most practical method of conducting mass appraisals such as citywide revaluations because this approach produces "a separate building and land value, which is required for state reporting purposes." In valuing Plaza Village, Wilcox relied upon measurements and figures supplied by an inspector who had allegedly examined the inside of the complex. Wilcox himself had never been inside Plaza Village. Wilcox further testified that he utilized a figure of 10.5 percent for physical depreciation. Using these figures, Wilcox valued Plaza Village at $5,369,396 for the buildings and improvements and $1,675,399 for the land. Adding these figures together, Wilcox arrived at a total valuation of $7,042,795 for each of the years in question.

William E. Coyle, Jr. (Coyle), a real estate appraiser and consultant, testified for plaintiff and took issue with the appraisal method used by Wilcox to evaluate Plaza Village. Coyle appraised the property, using the "capitalization of income" approach (income approach), another recognized method of property valuation.[4] Coyle opined that in this instance the income approach was the more preferable method of calculating fair-market value because of the rental limitations imposed by HUD regulations. In valuing Plaza Village, Coyle utilized the controlled rental income established by HUD and subtracted typical expenses that would be projected by a prudent investor. Coyle then applied a capitalization rate of 12.37 percent, which included a tax factor, and arrived at the following fair-market valuations: $3,960,622 for 1988, $3,904,511 for 1989, $3,840,507 for 1990, and $3,909,944 for 1991. Prior to presenting these figures at trial, plaintiff presented them to opposing counsel and the trial justice at a conference in chambers. The trial justice requested that Coyle perform another appraisal of Plaza Village, this time using a capitalization rate of 6 percent and the actual profits and losses that plaintiff had submitted to HUD for each of the years in question. The 6-percent capitalization figure represented the rate of return limited by the HUD contract. Using these figures, Coyle arrived at the following valuations: $4,296,757 for the year 1988, $3,667,111 for the year 1989, $3,545,851 for the year 1990, and $3,956,361 for the year 1991.[5]

The defendant disputed Coyle's calculations, claiming that the figure used for depreciation should be added to net income for capitalization purposes. The defendant, however, failed to present expert testimony on this subject. To refute defendant's allegation, plaintiff presented Frank Sciuto (Sciuto), a certified public accountant with a master's degree in both accounting and taxation. After examining Coyle's projections and the audited returns that plaintiff had filed with the Federal Government, Sciuto testified that depreciation "definitely should not be added back into the calculation of the capitalization of income approach on Plaza Village." Rath-

---

3. The "replacement cost" is the cost of replacing a structure or improvement with a similar structure or improvement made with new materials. Once this figure is calculated, any estimated accrued depreciation is deducted, and the estimated value of the land is added. The result is the valuation of property by means of the replacement-cost-minus-depreciation method. *Kargman v. Jacobs*, 122 R.I. 720, 723 n.4, 411 A.2d 1326, 1328 n.4 (1980).

4. The income approach estimates value based on factual data with respect to the income yield to the property. It is a mathematical process for converting the stream of income derived from real estate into capital value. Value is based on the present and prospective income from the property. A factor known as the capitalization rate is applied to the estimated net annual income produced by the property to determine its value. This capitalization rate is the rate representing a fair return on the investment. *See Kargman v. Jacobs*, 113 R.I. 696, 700 n.5, 325 A.2d 543, 545 n.5 (1974).

5. These figures represented the uniform 75 percent of the fairmarket value applied to all Woonsocket residential property.

er, Sciuto explained, depreciation is included in the calculation of taxable income.

Sciuto's testimony then turned to an illustration of how an accounting expert might calculate a capitalized income value for Plaza Village based upon a cash-flow analysis. In his cash-flow analysis, Sciuto set out the net operating income without including depreciation. He then calculated a straight-line depreciation of $156,246 based on an anticipated tax benefit of owning Plaza Village. Adding the tax benefit to the net operating income, Sciuto arrived at a net cash flow before taxes and mortgage. Sciuto calculated the tax benefit at 35 percent of the net loss after applying his depreciation figure. The 35–percent figure represented the tax that would have been paid by the typical corporate investor in the years in question for both state and federal income tax. From his calculations Sciuto arrived at the following capitalized value and appropriate tax for each of the years in question:

| YEAR | VALUE | TAX |
| --- | --- | --- |
| 1988 | $4,413,691 | $80,771 |
| 1989 | $4,290,162 | $80,441 |
| 1990 | $4,178,903 | $87,841 |
| 1991 | $4,432,276 | $99,505 |

After all the evidence concerning the valuation of Plaza Village had been presented, the trial justice rendered his decision. He based his decision on Sciuto's valuation figure of $4,413,691 for the year 1988. The trial justice then departed from this figure and did exactly what Sciuto said should not be done. He added in the actual depreciation figure of $364,340 and concluded that Plaza Village's 75–percent uniform value was $5,401,927 as of December 31, 1987. From this figure the trial justice determined that plaintiff was entitled to the following tax refunds:

| YEAR | REFUND |
| --- | --- |
| 1988 | $30,027 |
| 1990 | $34,491 |
| 1991 | $36,837 |

After awarding plaintiff $27,109 in interest and $400 in costs, the trial justice concluded that plaintiff was entitled to a total

refund of $128,864. The trial justice dismissed plaintiff's petition for the year 1989, stating that plaintiff had failed to file the petition in a timely manner.

### WALNUT HILL

The second property, referred to as Walnut Hill, is a 125–unit housing development with a mixture of subsidized and nonsubsidized apartments. The Walnut Hill units that are subsidized by HUD are done so pursuant to § 221(d)(3) of the National Housing Act. *See* 12 U.S.C.A. § 1715L (West 1989). No oral testimony was presented relative to the valuation of the Walnut Hill complex. Rather the parties agreed to submit the appraisals of Coyle, Sciuto, and Wilcox. All the documentary evidence was presented by stipulation.

The city assessed Walnut Hill at $4,533,920 for each of the years in question. Coyle, using the income approach, calculated a value of $2,856,936. The trial justice based his decision on Sciuto's valuation of $2,634,084, which was derived from a cash-flow analysis and a 6–percent capitalization rate. The trial justice then added a depreciation expense of $115,000 to the net income, which was based on the property's average depreciation over the previous four years, and arrived at a 75–percent valuation of $2,777,123. He concluded from this assessment that plaintiff was entitled to the following tax refunds:

| YEAR | REFUND |
| --- | --- |
| 1988 | $35,218 |
| 1989 | $36,085 |
| 1990 | $40,453 |
| 1991 | $43,205 |

After awarding plaintiff interest in the amount of $44,789 and costs in the amount of $400, the trial justice concluded that plaintiff was entitled to a total refund of $200,152 for Walnut Hill.[6]

In both the Plaza Village and the Walnut Hill judgments, the trial justice ruled that the fair-market value calculated for each piece of real estate shall remain in effect "until the next municipal wide revaluation

---

**6.** Although we recognize that the total refund figure actually adds up to $200,150, the figure in the Superior Court judgment is listed as $200,152.

or until such time as the propert[ies] are no longer subject to federal regulations."

We now turn to an analysis of the issues raised by both parties on appeal.

## I

### DEFENDANT'S APPEAL

#### A

The first argument presented by defendant is that Coyle's testimony lacked proper foundation and, as such, should have been disregarded by the trial justice. The defendant contends that Coyle's testimony was suspect because his calculations remained the same despite variations in the data he was using. The defendant claims that Coyle could have arrived at any desired valuation simply by adjusting the rate of depreciation or the rate of capitalization.

It is well settled that "the findings of a trial justice sitting without a jury are accorded great deference and will not be disturbed unless it is demonstrated that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong." *Green v. Green,* 559 A.2d 1047, 1048 (R.I.1989).

This court has previously stated that "[f]acts upon which the opinion of the expert is based must be stated; otherwise, 'it becomes impossible to ascertain whether the conclusion drawn from them possesses sufficient probative force; or is not mere conjecture or speculation.' " *Gorham v. Public Building Authority of Providence,* 612 A.2d 708, 717 (R.I.1992) (quoting *Alterio v. Biltmore Construction Corp.,* 119 R.I. 307, 313, 377 A.2d 237, 240 (1977), and *Dickinson–Tidewater, Inc. v. Supervisor of Assessments,* 273 Md. 245, 253, 329 A.2d 18, 23–24 (1974)). If the expert fails specifically to set forth the factual basis for his conclusion, the court must disregard his testimony. *Burrillville Racing Ass'n v. Tellier,* 574 A.2d 749, 752 (R.I.1990).

A review of the trial transcript leads us to conclude that Coyle adequately explained the factual basis for his conclusions. Coyle's extensive testimony included a step-by-step account of how he arrived at each of his valuations. Coyle disclosed all the capitalization rates he used in determining fair-market value. He also explained the differing expense figures he employed to calculate Plaza Village's net income. Moreover, Coyle submitted into evidence reports detailing the numbers and figures he utilized in each analysis. Accordingly we find that Coyle's testimony did not lack proper foundation and that the trial justice was not clearly wrong in allowing Coyle to testify.

#### B

The defendant next claims that the cost approach is the only practical method for conducting mass appraisals such as a municipal revaluation. The defendant therefore believes that the trial justice erred in rejecting the city's valuation of the two properties based on the cost approach. After reviewing our decision in *Kargman v. Jacobs,* 122 R.I. 720, 411 A.2d 1326 (1980) (*Kargman II*), we find defendant's contention to be without merit.

In *Kargman II* this court addressed a set of circumstances similar to the facts of the case at hand. The taxpayers in *Kargman II,* owners of an apartment complex financed by the Federal Government pursuant to § 221(d)(3) of the National Housing Act, filed several petitions for relief from alleged over-assessment of taxes. The tax assessor had based his valuation on figures derived from the cost approach. At trial the taxpayers presented testimony of expert appraisers who valued the same real estate pursuant to the income approach. The trial justice granted the taxpayers' petitions, claiming that the income approach was the preferable method of valuing the federally financed apartment complex. According to the trial justice, the property's income capacity would certainly affect the property's cash value because a prudent buyer would only purchase the property for investment purposes. Consequently the trial justice rejected the assessor's valuation based on the cost approach because the assessor did not accord any weight to the property's income.

On appeal the tax assessor in *Kargman II* claimed that the trial justice erred in rejecting his assessment. The tax assessor believed that our decision in *Kargman v. Jacobs*, 113 R.I. 696, 325 A.2d 543 (1974) (*Kargman I*), wherein we upheld earlier tax assessments on the same property, applying the cost approach, insulated his use of the cost approach from further challenge. We upheld the ruling of the trial justice in *Kargman II*, finding that the trial justice acted well within his capacity as factfinder. We additionally determined that federal regulations limiting the rents of an apartment complex are a relevant factor to consider in assessing its value. In light of *Kargman II*, we find defendant's characterization of the cost approach as the only practical method of conducting municipal valuations to be incorrect.

Moreover, this court has construed the term "fair-market value" to mean "that price the property would probably bring in a transaction in a fair market between a willing seller and a willing buyer." *Rosen v. Restrepo*, 119 R.I. 398, 400, 380 A.2d 960, 961 (1977). We believe that this definition supports the use of the income approach in the case at hand because a prudent buyer of the two properties would not be interested in their replacement cost. Rather a prudent buyer would only be interested in what gains he or she might realize from the capital investment. Accordingly we conclude that the trial justice was not clearly wrong in rejecting defendant's calculations based on the cost approach.

We are well aware that "the tax assessor is not bound by any particular formula, rule or method * * * to ascertain the fair market value of real estate. His choice of one of the recognized methods of valuation is simply an exercise of [his] discretion." *Kargman I*, 113 R.I. at 704, 325 A.2d at 547–48. We are also aware that "tax assessors are entitled to a presumption that they have performed their official acts properly until the contrary is proven." *Kargman II*, 122 R.I. at 731, 411 A.2d at 1332; *Greenough v. Board of Canvassers and Registration*, 33 R.I. 559, 571, 82 A. 406, 410–11 (1912). "The burden of proof is on the taxpayer to establish * * * that defendant assessor has set a value on the subject property that is greater than its full and fair cash value." *Kargman I*, 113 R.I. at 703, 325 A.2d at 547. For the reasons stated above, we are of the opinion that the trial justice did not err in finding that plaintiff had satisfied its burden.

C

■ The defendant argues that the trial justice improperly based his decision on the testimony of Sciuto. Although conceding that Sciuto was a tax and accounting expert, defendant contends that his expertise was not related either to municipal tax assessments or to the appraisal of real estate. Citing *Kargman I*, defendant avers that Sciuto's allocation of the properties' income based on cash flow and tax considerations created a "mathematical morass" in valuing the two properties. We disagree.

Determinations of trial justices regarding the competency of expert witnesses have traditionally been afforded great latitude. "The test of qualification as an expert witness lies in the sound discretion of the trial justice, and his or her determinations in this regard will not be disturbed in the absence of clear error or abuse." *Bateman v. Mello*, 617 A.2d 877, 879 (R.I. 1992) (quoting *Cobe v. Hersey*, 576 A.2d 1226, 1232 (R.I.1990)). After reviewing Sciuto's extensive resume, we find that the trial justice did not abuse his discretion in allowing Sciuto to testify on the valuation of Plaza Village. Sciuto's valuation was consumed with complex principles of taxation and accounting. In his cash-flow analysis, Sciuto applied complicated accounting formulas to the facts and figures of the case at hand. Indeed, we believe that Sciuto was just as qualified to value the two parcels as any real estate appraisal expert.

■ We are also of the opinion that the trial justice was not clearly wrong in basing his decision on Sciuto's testimony. This court has held that "a trier of fact can accept the property valuation of one set of experts and reject that of another set of

experts." *Kargman II*, 122 R.I. at 735, 411 A.2d at 1334; *Socony–Vacuum Oil Co. v. French*, 88 R.I. 6, 11–12, 143 A.2d 318, 321 (1958). Just as a trial justice may pick and choose among evidence presented by laypersons, he or she may do the same when dealing with evidence of experts. As stated above, Sciuto provided extensive testimony and figures supporting his valuation. We therefore find that the trial justice acted within the bounds of his discretion in relying on Sciuto's testimony.

### D

■ The next argument raised by defendant on appeal is that the trial justice erred by not including in his valuations a separate value for the land independent of the buildings. In support of this contention defendant points to the hybrid approach utilized in *Kargman II*, wherein the trial justice attributed a separate value for the land in the assessment based on the income approach. Accordingly defendant asks this court to modify the trial justice's valuations by adding to them the value of the undeveloped land for both properties.

As Sciuto testified, when one uses the income approach, the resulting valuation includes the value of income from the *whole* project. Unlike the cost approach wherein the land and the buildings must be valued separately, the income approach produces one total project value. When arriving at a total value, the appraiser may allocate separate amounts for the land, the buildings, and the fixtures. An appraiser, however, is not obligated to provide separate valuations. Although we recognize that the trial justice in *Kargman II* attributed a separate valuation for the undeveloped land, the necessity of doing so was not raised as an issue in that case.

Moreover, Coyle testified that the undeveloped land of Plaza Village held no separate value because nothing more could have been built on this land. He noted that Plaza Village was already built to the maximum number of units allowed under the zoning code. Furthermore, even if the zoning board had approved the construction of additional units, the land's topography physically prevented such an addition. Although the trial justice did not refer to this testimony in his decision, we find that it provides further support for our conclusion that the trial justice did not err by failing to provide a separate valuation for the land without the buildings.

### E

■ Another issue raised by defendant is that the trial justice exceeded his authority by ordering the tax assessments of Plaza Village and Walnut Hill to remain in effect until the next citywide valuation or until the properties are no longer subject to federal regulations. The defendant bases his argument on the fact that taxpayers are required to dispute tax assessments on a yearly basis. *See Northgate Associates v. Shorey*, 541 A.2d 1192, 1193 (R.I.1988); G.L.1956 (1988 Reenactment) § 44–5–26. According to defendant, the trial justice's ruling would relieve plaintiff of its statutory duty to file annual petitions contesting defendant's assessments of Plaza Village and Walnut Hill.

In contesting the trial justice's ruling on this issue, defendant is laboring under the mistaken belief that he may repeat an assessment found to be invalid by the court. If this were true, then plaintiff would be forced to relitigate annually the issue of fair-market value. Such a contention completely ignores the doctrine of res judicata. Once a court of competent jurisdiction has decided issues of fact and law, both parties to the action are precluded from relitigating the same issues in a subsequent lawsuit. *Rhode Island Student Loan Authority v. NELS, Inc.*, 600 A.2d 717, 720 (R.I.1991).

We therefore conclude that the trial justice did not abuse his discretion by ordering the tax assessments of Plaza Village and Walnut Hill to remain in effect until the next citywide valuation or until the properties were no longer subject to federal regulations. Without the occurrence of one of these events plaintiff would be required to relitigate issues already decided.

**F**

Lastly defendant argues that G.L.1956 (1988 Reenactment) §§ 44–5–11, 44–5–26, and 44–5–27 are inconsistent and irreconcilable with one another. The defendant claims that these statutes provide the taxpayer and municipalities with differing and conflicting directions for relief. Section 44–5–11 prevents municipalities from changing a property's assessed value during the ten-year cycle of valuation without conducting an entire revaluation. On the other hand, § 44–5–26 allows the individual taxpayer to challenge the assessed value of his or her property on a yearly basis. The defendant alleges that this statutory scheme leads to inequitable results.

■ It is a well-settled rule of appellate practice that matters not brought to the attention of the trial justice may not be raised for the first time in this court on appeal. *632 Metacom Associates v. Pub Dennis of Warren, Inc.*, 591 A.2d 379 (R.I. 1991). Our review of the trial record reveals that defendant did not raise this issue below. Consequently we need not address the issue on appeal.

For all the reasons stated, we hereby deny and dismiss defendant's appeal on all counts. We now turn to a discussion of the issues raised by plaintiff's appeal.

**II**

**PLAINTIFF'S APPEAL**

**A**

The plaintiff's first contention on appeal is that the trial justice erred by dismissing plaintiff's petition challenging the city's assessment of Plaza Village for the year 1989.

■ It is well settled that a taxpayer must file a timely petition for relief from assessment of taxes in order to have that year's assessment reviewed. *See Northgate Associates*, 541 A.2d at 1193. Section 44–5–26(a) provides that a taxpayer aggrieved by any assessment of taxes "may within three (3) months after the last day appointed for the payment without penalty of the tax * * * file an appeal with the local assessor and within thirty (30) days after a final decision * * * file a petition in the superior court * * * for relief from the assessment." Section 44–5–27 further provides that § 44–5–26 is the exclusive remedy for challenging tax assessments.

The facts indicate that plaintiff filed a timely appeal with the Woonsocket Assessment Board of Review (board), challenging the city's 1988 assessment of Plaza Village. The board did not render its decision on this matter until January 22, 1990, at which time it upheld the city's assessment. The plaintiff thereafter filed a petition for relief from assessment of taxes in the Superior Court, challenging the 1988 *and* 1989 assessments. The petition regarding the 1989 assessment was dismissed as not timely filed pursuant to § 44–5–26.

The plaintiff does not contest that it failed to file a timely petition challenging the city's 1989 assessment of Plaza Village. However, plaintiff claims that it was the board's delay in rendering a decision on its 1988 petition that resulted in plaintiff's failure to file a timely petition regarding the 1989 assessment. The plaintiff asserts that it would be inequitable to allow the city to profit from the inordinate delay caused by its own agency. Accordingly plaintiff contends that the city should be estopped from raising the defense of timeliness. We disagree.

■ The fact that the board was delayed in rendering its decision on plaintiff's 1988 petition had absolutely no effect on plaintiff's ability to file a petition challenging the city's assessment for 1989. The General Assembly has made it clear that a taxpayer is statutorily required to file a petition with respect to any given tax year " 'within three (3) months after the last day appointed for the payment' " of such tax without penalty. *Northgate Associates*, 541 A.2d at 1193; §§ 44–5–26 and 44–5–27. Since plaintiff did not seek relief pursuant to this statutory framework, its request for relief from the city's 1989 assessment cannot succeed. Consequently we affirm the trial justice's dismissal of plaintiff's peti-

tion challenging the 1989 assessment of Plaza Village.

## B

The plaintiff next avers that the trial justice erred by adding the amount of depreciation to Sciuto's valuation of Plaza Village. Our review of the trial record compels us to agree with this assertion.

As we stated earlier, "a trier of fact can accept the property valuation of one set of experts and reject that of another set of experts, particularly when he [or she] gives good reasons for so doing." *Kargman II*, 122 R.I. at 735, 411 A.2d at 1334. Although we recognize that the trial justice was free to accept the valuations presented by Sciuto, we believe that the trial justice committed error by subsequently adding depreciation to these figures.

Although defendant theorized that any net loss caused by the depreciation of Plaza Village should be added to its net income for valuation purposes, he presented no expert witness to buttress this contention. The only witness presented by the city was Wilcox. Wilcox had very little experience in real estate appraisal and offered no testimony regarding the capitalization-of-income approach. Wilcox stated that he utilized the capitalization-of-income approach to double check the assessment he arrived at using the cost approach, but he had no recollection or documentation to support this assertion. Moreover, the trial justice's actions completely contradict Sciuto's expressed conviction that the amount of depreciation claimed on Plaza Village's profit-and-loss statement "definitely should not be added back into the calculation of the capitalization of income approach on Plaza Village." We fail to understand how the trial justice could have accepted Sciuto's valuations and then disregarded his admonition regarding the addition of depreciation. The record is devoid of any evidence justifying this action. We therefore find that the trial justice erred by adding the value of depreciation to the valuation figures presented by Sciuto.

Because Sciuto's calculations are before this court, we deem it unnecessary to re-mand this case to the Superior Court to correct the trial justice's valuation. Rather we shall correct the trial justice's error by factoring out the $364,340 depreciation figure. After making this calculation, we arrive at the following 75–percent valuations for Plaza Village: $4,413,691 for the year 1988, $4,178,903 for the year 1990, and $4,432,276 for 1991. From these figures we determine that plaintiff owed the following taxes for each of the years in question:

| YEAR | TAXES |
|------|-------|
| 1988 | $80,771 |
| 1990 | $87,841 |
| 1991 | $99,505 |

Subtracting these numbers from the amount of taxes actually paid by plaintiff, we conclude that plaintiff is entitled to a total tax refund of $166,916 plus interest according to law.

In regard to the Walnut Hill property, the plaintiff concedes that the trial justice made the same mistake of adding depreciation to the valuations made by Sciuto. However, since the trial justice's valuation turned out to be lower than Coyle's valuation, upon which the plaintiff principally relied, the plaintiff waives its objection to the trial justice's judgment regarding Walnut Hill. Consequently, we need not correct the trial justice's valuation of Walnut Hill and the corresponding tax refund accorded to the plaintiff.

For the reasons stated, the plaintiff's appeal is denied in part and granted in part. We deny the plaintiff's appeal challenging the trial justice's dismissal of the plaintiff's 1989 petition for relief from assessment of taxes. We sustain the plaintiff's appeal regarding the trial justice's valuation of Plaza Village for the years 1988, 1990, and 1991. The case is remanded to the Superior Court for entry of judgment consistent with this opinion.

WEISBERGER and LEDERBERG, JJ., did not participate.