DECISION
This matter is before the Court for a decision upon plaintiffs appeal of defendant's December 31, 1995 tax assessment of certain real estate in Newport. The affected parcel is known as The Rolling Green Apartment Complex, which is comprised of 201 low-income housing units. The units are contained within six wood framed, brick-veneered buildings located upon 10.47 acres of land. The project is regulated by sec. 221 (d)(3) of the National Housing Act of 1961 which offers a below-market interest rate program (BMIR), limiting the investors/owners to a 6% return on the original required entity.
The Tax Assessor valued the property at $3,708,200. Plaintiff filed its account with a fair market value of $2,477,400 as indicated within the joint appraisal of experts Peter Merritt and John Crimmins.
At trial, Mr. Allan Booth (the City's Tax Assessor since 1987) testified that Saver Systems of Dayton, Ohio, was engaged to partake in the citywide revaluation in 1992. Evidently, this entity believed the replacement cost appraisal method should be applied and assessed the fair market value at $6,716,900. Mr. Booth (also an expert appraiser) did not agree with this approach as he felt it was appropriate to apply the provisions of R.L.G.L. Section 44-5-11. That section provides that low income properties shall be subject to a tax which equals eight percent of the property's previous years' gross scheduled rental income. Notably, that statute applies only to residential property which has been issued an occupancy permit on or before January 1, 1995, after "substantial rehabilitation."
After the Board of Tax Appeals considered plaintiffs challenge to the assessment it reduced the figure to $3,708,200. Mr. Booth very candidly testified that: There was nothing to show why it was $3.7 million. I don't know how they got it."
The Court also heard testimony from the developer of Rolling Green, Mr. Franklin Simon. Mr. Simon, a graduate of the Harvard Business School, has been in the real estate management business for 37 years. Mr. Simon explained how the HUD regulations control the amount of rent which can be requested. With this particular project, there has never been a surplus and the investors have received no return on their investment. The only benefit they did receive was a tax shelter for five to six years. Moreover, the property could not have been sold in December of 1995 because of the enactment of the HUD Preservation Act.
Mr. Simon's expert, Peter Merritt, testified that the only appropriate method of evaluating this property is by the "income approach." The latter is based upon the theory that the value of a property is determined by the anticipated future benefits (usually income) generated over the property's economic life. (See Exh. 4). Generally, an appraiser would determine the "market rent" the project would generate, that amount comprising the annual potential gross income. That figure would be reduced by "vacancy and collection loss", yielding the effective gross income. The latter is then reduced by operating expenses to determine the property's net operating income. That figure, capitalized, yields the time value of the property. Because the property is a national investor-specific property, Mr. Merritt consulted National Real Estate Publicaitons to develop a capitalization rate. After setting that rate at 9% and completing each phase of the required calculation, this appraiser set the market value of the property at $2,480,000.
The defendant's expert, Mr. Roy Schaeffer, totally disagreed with Mr. Merritt's application of the income methodology. Although he acknowledged that the income approach is usually applicable to investment properties, he exempted subsidized properties because of regulations limiting the distribution of cash flow to the owner. Mr. Schaeffer, using the comparable sales approach, concluded that the current assessment of the property at $3,708,200 is supported by market data for 1995 and the year prior, and set the market value at $4,455,000. It must be noted that Mr. Schaeffer's report is a "limited appraisal" The defendant urges this Court to endorse the utilization of the comparable sales approach and to accept the assessment of $3,708,200,
The plaintiff directing the Court to Kargman v. Jacobs,411 A.2d 1326 (1980), maintains that the December, 1995 assessment was not based upon a determination of fair market value by a proper method, and thus is invalid. In Kargman, the affected property was also a Section 221 (d)(3) federally financed apartment complex. At trial the defendant Tax Assessor defended his valuation using the "replacement-cost-minus depreciation" method. The taxpayer's expert refuted this approach as speculative since it failed to consider the effects of federal regulations on income and expenses. The Kargman three experts testified that the preferred method of valuation was the "capitalization of income" approach. The Court approved of the expert's consideration of maximum allowable rents due to federal regulations.
The Court finds in the instant case, as did the trial justice in Kargman, that the opinion of "value based on the capitalization of income approach is the more persuasive. Mr. Merritt's appraisal was extremely thorough and based on sound data, including that contained in the investor's detailed financial statements. The Court rejects the comparable sales methodology because it presumes a fair market transaction between a willing seller and a willing buyer. A prudent buyer of a federally regulated apartment complex would be interested in the gains to be realized from a capital investment, and not the replacement cost of the property. See Ferland Corp. vs. Bouchard,626 A.2d 210 (1993).
The only valid and credible estimation of fair market value on this record is that of Peter Merritt. The Court, in its discretion, attributes great weight to his trial testimony and the associated documentary evidence. The Court finds that as of December 31, 1995 the fair market value of Rolling Green Village Apartment Complex was $2,477,400 rounded to $2,480,000. Applying the tax assessment rate of $23.20 per thousand, plaintiffs proper tax bill should have been $57,536. Plaintiff is thus entitled to recover the excess paid. $28,494.24, and the Court shall enter judgment on behalf of the plaintiff in that sum.