DECISION
Plaintiff, Harvard Pilgrim Health Care of New England, Inc., in Liquidation, (Harvard Pilgrim) appealed the City of Providence's (City) valuations and assessments for the taxable years of 1997, 1998, 1999 and 2000 alleging that they were illegal; that the property was valued by the City in excess of 100 percent of fair market value; and, that the valuation included items not ratable. The four tax appeals were consolidated by agreement for trial and submitted to the trial judge in accordance with Order dated August 28, 2000 entered by Superior Court Presiding Justice Joseph F. Rodgers, Jr.
Subsequent to several days of trial in November 2001, the parties filed memoranda in support of their positions on the issues raised. The City also filed a Motion for Judgment on Partial Findings pursuant to R.C.P. 52(c) to which Harvard Pilgrim objected and a Motion to Amend Answers to Conform to the Evidence pursuant to R.C.P. 15(b), seeking to add affirmative defenses of R.I.G.L. §§ 44-5-26 and 27 and R.I.G.L. § 44-5.5 and 16 to cases designated C.A. No. 98-4168 and C.A. No. 99-2966, to which there was no objection and, therefore, is granted. The City's positions in its Rule 52(c) motion are an integral part of the analysis and discussion of the pertinent issues in this decision, are subsumed herein and, therefore, it is denied.
During the trial, testimonial and documentary evidence was introduced relative to various issues some of which was only applicable to particular taxable years while some was common to all. Where possible and to avoid redundancy, the common issues will be addressed and decided with the discussion of particular issues being reserved until the remaining issues for specific taxable years are considered.
A major issue raised by Harvard Pilgrim is its belief that the City assessed its ratable property for taxable years 1997, 1998, 1999 and 2000 in excess of fair market value in violation of R.I.G.L. § 44-5-12.
 R.I.G.L. § 44-5-12 in pertinent part provides:
 "All property subject to taxation shall be assessed at its full and fair cash value or at a uniform percentage of its value, not to exceed one hundred percent (100 percent) to be determined by the assessor in each town or city . . . ."
Our Supreme Court has found that "full and fair cash value" means fair market value, Allen v. Bonded Municipal Corp., 62 R.I. 101 (1938); and has further defined "fair market value" as "that price that the property would probably bring in a fair market between a willing seller and a willing buyer." Ferland Corp. v. Bouchard, 626 A.2d 215 (R.I. 1993) (citing Rosen v. Restrepo, 380 A.2d 960 (R.I. 1977)). In Rosen supra, the court observed that the statute had been amended in 1965 allowing assessors to assess ratable property at its full and fair cash value or at a uniform percentage thereof. Citing Kargman v. Jacobs (I), 325 A.2d 53 (R.I. 1974), the court reiterated that an assessor, in determining fair market value of ratable property is not bound by any particular formula, the selection of one over others being a discretionary act. To be noted in Kargman v. Jacobs (II), 411 A.2d 1326 (R.I. 1980), our Supreme Court stated unequivocally that "tax assessors are entitled to the presumption that they have performed their official acts properly until the contrary is proven."
All of the above principles were cited with approval in FerlandCorporation (1993) supra.
Thomas Rossi, the City's assessor for several years, testified in essence that acquisition cost minus depreciation of items of personal tangible property is the formula used by the City to establish fair market value. He testified that his office used the information supplied by the taxpayer on an annual return and applied various depreciation schedules for furniture and equipment; for computers; and for leasehold improvements.
Thomas J. Sullivan, a CPA who works in the tax and health care fields as a tax consultant, called by the City as an expert witness, essentially testified that from an accountant's point of view, the City's method of depreciation fails to reach fair market value.
Indeed, Harvard Pilgrims experts J. Gregory McEachern, an appraiser for Norman Levy Associates, Inc., and George Moses, a former Assessor of the City of Boston, both testified that the City's depreciation schedules do not reflect fair market value of its assets for the years in issue. Harvard Pilgrim argues that the depreciation method employed had as its purpose the maximization of tax revenue for the City not fair assessment of personal property.
The City responds that its acquisition cost minus depreciation method used for decades comports with legislative directives while conceding that the employment of said method does not necessarily reflect precise fair market value. In defense of the lack of precision, the City argues that it treats taxpayers uniformly and the method is the best "approximation" of fair market value that can be ascertained while achieving that uniformity.
Although the experts seem to be in agreement that the cost minus depreciation method used by the City to determine the fair market value of ratable personal property may not be the most preferred or accurate, it is within the City's broad discretion to fashion a uniformly applied formula. Having settled upon a method, in this case, a depreciation system, it is presumed that the tax assessor has acted properly unless the contrary can be demonstrated. No evidence was presented to support the broad assertion of Harvard Pilgrim that the assessments for the four years in question were made in excess of the tax assessor's discretion or indeed, contrary to law. Its arguments of illegality are premised upon a disagreement on what is a better method of determining fair market value and ignores that section of the statute which in the disjunctive requires uniformity in assessment of the method employed as long as it is even handedly applied and Harvard Pilgrim introduced no evidence that it was not.
The Court therefore finds that the City's acquisition cost minus depreciation is not in and of itself an illegal method of tax assessment.
Before addressing the merits of Harvard Pilgrims claims, the stipulated and uncontroverted facts common to all four appeals will be outlined. As each separate year is considered those facts will be supplemented by other evidence adduced at the trial when addressing issues which are peculiar to one or more of the appeals.
The City of Providence requires an annual accounting from owners of certain taxable personal property and accepts any form of reporting even though it supplies a form which Harvard Pilgrim used for the four years in question. The City form consists of several sections only five of which applied to Harvard Pilgrim for various years: Section 2, Tangible Personal Property; Section 3, Computer Equipment; Section 4, Inventory/Stock in Trade/Supplies; Section 5, Tangible Property Leased or Rented from Others; and Section 6, Leasehold Improvements.
Sections 2 and 3 have a column where the taxpayer may declare what is believed to be the fair market value of the listed assets. Section 3 has no such space and the assessor had no explanation as to why. In any event he testified that the City made no use of such declarations, a fact confirmed by another City employee.
Rossi's testimony of fair market value is the value of a particular item at a particular time, potentially for resale. He said that he depended upon the taxpayer's return with the acquisition costs and values of assets owned by various businesses. The City then employed various depreciation schedules (percent good factors) to various types of property to arrive at fair market value.
The City had depreciation schedules for computers, leased equipment and leasehold improvements allegedly using Marshall Swift life expectancy guidelines on furniture, fixtures and equipment. In establishing the depreciation schedules, Rossi considered such valuation factors as functional and economic obsolescence of an asset in a general way; however, in developing depreciation schedules for 1999 and 2000 tax years, the City did not materially consider physical depreciation, functional, economic or external obsolescence. For 1999 tax year the City viewed assets purchased in that year would not necessarily depreciate and did not consider ranges of life for computers but rather supposedly reviewed newspapers for values of used computers.
Rossi concluded that the City's depreciation schedules arrived at the fair market value of Harvard Pilgrim's tangible property for the years in question.
Notwithstanding Rossi's assertion, the City's own expert Sullivan testified that the City's depreciation schedules do not measure the fair market value of assets and that the City's approach for several years had been to use acquisition costs, not fair market value for assessment purposes.
Harvard Pilgrim's expert, George Moses of Ernst Young, an assessor in Boston for 11 years, also opined that the percent good factor tables (depreciation schedules) applied by the City did not reflect the fair market value of the assets. Indeed he testified that an assessor has a twofold mandate: (1) to apply techniques to accurately assess property; and (2) apply techniques which uniformly assesses property relative to other comparable taxpayers. He testified that similar assets in Providence and Boston would be assessed higher in Providence describing the assessment situation in Providence as unique.
In 1997, Harvard Pilgrim had the previously mentioned George Moses of Ernst Young review the manner of preparing, reporting and filing Harvard Pilgrim's annual property reports to the City. For our present purposes it is sufficient to note that by letter dated May 14, 1997, Moses notified City officials that Harvard Pilgrim had not accurately reported tangible personal property on site in Providence and detailed reasons why Harvard Pilgrim had been over assessed, (example, previously disposed assets had been included in the return and labor, freight and installation charges had erroneously been included in net book value).
Moses, on behalf of Harvard Pilgrim hired Norman Levy Associates to accurately identify Harvard Pilgrim's assets on site and to establish the fair market value of those assets. Specifically, Norman Levy was asked to count and tag the assets, value the counted assets and to render an opinion as to their fair market value. John G.
McEachern, a certified appraiser with Norman Levy concentrating in the area of personal property, undertook the task. The personal property tagged consisted of office fixtures/equipment and computer equipment totaling about 9000 items. After the inventory was complete, he inspected each asset and set about valuing it, using charts, texts, Norman Levy's data base, Blue Books, where available, spoke to dealers in the field and looked into supply and demand in the marketplace. McEachern testified that there are various approaches to valuing personal property, the market approach, the cost approach and the income approach. He used the market approach on the premise that the assets involved would be sold in the market over a period of time.
McEachern's appraisal, accepted into evidence, was dated August 12, 1998[1] and he applied his findings to determine the fair market value of Harvard Pilgrim's office fixtures/furnishings and computer equipment as of December 31, 1996 (for 1997 tax year).
He stated that his professional experience as an appraiser allowed him to look at an asset and, if appropriate, reasonably estimate its value as far back as 2.5 years prior to inspection.
Harvard Pilgrim has challenged the City's fair market value determination of its ratable personal property for the four years at issue and therefore assumes the burden to present evidence relative to fair market value. Nos. Ltd. Partnership v. Booth, 654 A.2d 308 (R.I. 1995). Upon demonstrating that the property has not been assessed at fair market value, Harvard Pilgrim must prove what portion of the tax paid constitutes an illegal or disproportionate tax. Oster v. Pellieri,544 A.2d 128 (R.I. 1988). In this context and in the light of the evidence outlined above and to be further developed where appropriate, the Court will embark upon a consideration of the issues presented in each of the four years.
 1997 Tax Year: C.A. No. PC 98-4168
Based upon the annual return filed by Harvard Pilgrim on March 14, 1997 for its tangible property as of December 31, 1996, the City valued that property at $5,849,100.00 for the 1977 tax year. The City assessed Harvard Pilgrim $449,094.00 and Harvard Pilgrim paid a total of $458,075.78 for the tax year. Harvard Pilgrim's appeal is limited to the City's evaluation of its office fixtures/equipment and computer equipment based upon the August 1998 McEachern appraisal of $2,210,725.00 resulting in an overpayment by Harvard Pilgrim of $225,592.55, the amount it seeks reimbursement.
Harvard Pilgrim predicates all its appeals on its contention that the City's depreciation schedules do not reflect the fair market value of the assets at issue arguing that the McEachern appraisal of 1998, which is the cornerstone of its appeal, does. Setting aside the methodology used by McEachern and its validity, the retroactivity of the 1998 appraisal to the 1997 taxable year reflecting the value of Harvard Pilgrim's taxable assets as of December 31, 1996 is of concern. It does violence to the premise that assets are to be assessed based upon "current" fair market value. To somehow allow an expert to engage in some form of subjective interpolation introduces too much speculation into the process. Such a process undermines the very nature of expert opinion which must carry with it the indicia of probability. Irrespective of Mr. McEachern's belief that he had the ability to retrospectively value an asset, the Court is still skeptical about it's probative value and ought not to allow such opinion to form the basis for Harvard Pilgrim's appeal.
The Court parenthetically points out that Harvard Pilgrim was less than diligent in regard to establishing and supplying accurate asset values where called for on the annual returns. Its obligation to know the value of its taxable assets is not diminished by the fact that there might not be a place for it on the annual return or that City officials may have ignored the information even if supplied.
It is clear that for the 1997 taxable year, Harvard Pilgrim did not have either sufficient knowledge of what tangible assets it had on its premises or an understanding of what factors went into their evaluation.
Harvard Pilgrim's institutional systems failures in this regard ought not to allow it to challenge the City's valuation and assessments under the guise that its errors in accurate reporting were "inadvertent". This provision in the statute was to prevent injustices not reward mismanagement.
For the above reasons, judgment for the City in PC 98-4168 is appropriate.
 1998 Tax Year: C.A. No. PC 99-2966
Based upon the annual return filed by Harvard Pilgrim on March 3, 1998 for its tangible property as of December 31, 1997, the City valued varied types of property at 6,570,700.00 for the 1998 tax year. The City assessed Harvard Pilgrim $504,498.00 which it paid. As it did for the year 1997, Harvard Pilgrim limited its appeal to the valuation and assessment of its office fixtures/equipment and computer equipment. Based upon the August 1998 McEachern appraisal, the fair market value of these assets was $1,842,070.00 as of December 31, 1997 and by its calculations overpaid the City in the amount of $289,557.00.
The observations made by the Court in resolving the 1997 tax issue are equally applicable for the taxable year 1998 and, therefore, judgment for the City in PC 99-2966 is appropriate.
 1999 Tax Year: C.A. No. PC 01-4263
Before addressing the substantive issues raised for taxable year 1999, the Court will consider the timely approval issue raised by the City for taxable year 1999.
It is undisputed that Harvard Pilgrim's 1999 annual return was timely filed and received by the City on February 1, 1999. On October 25, 1999, Harvard Pilgrim was placed into rehabilitation and, thereafter, into liquidation on January 10, 2000. Harvard Pilgrim then filed its appeal of the assessment with the City on January 26, 2001, which made no reply to the late filing, and ultimately Harvard Pilgrim filed its judicial appeal with the Superior Court on August 21, 2001.
It is Harvard Pilgrim's position that the time periods set forth in R.I.G.L. § 44-5-26 in order for a taxpayer to preserve rights of appeal do not apply to it because of the intervening rehabilitation and liquidation events. It argues that these time periods were extended by two sections of the Insurers' Rehabilitation and Liquidation Act of1993, namely R.I.G.L. § 27-14.3-19 and R.I.G.L. § 27-14.3-28. The pertinent portions of each provides as follows:
 27-14.3-19. Actions by and Against Rehabilitator
 a) * * *
 b) . . . . The rehabilitator may, upon order for rehabilitation, within one year or other longer time as applicable law may permit, institute an action or proceeding on behalf of the insurer upon any cause of action against which the period of limitation fixed by applicable law has not expired at the time of the filing of the petition upon which the order is entered.
 c) * * *
 27-14.3-28. Actions By and Against Liquidator
 a) * * *
 b) The liquidator may, upon or after an order of liquidation within two (2) years or longer time as applicable law may permit, institute an action or proceeding on behalf of the estate of the insurer upon any cause of action against which the period of limitation fixed by applicable law has not expired at the time of the filing of the petition upon which the order is entered. . . . .
 c) * * *
Harvard Pilgrim urges upon the Court that administrative tax assessments and appeals are "actions" or "proceedings" as set forth in the above sections and, therefore, the extensions provided therein apply and its January 26, 2001 appeal for the 1999 tax year was timely.
The City counters that by bringing the decision of the City Assessor to the Board of Tax Assessment for review is an administrative appeal and not a cause of action, referring to the statutory scheme found in R.I.G.L. § 44-5-26 wherein references are made to appeals. Since Harvard Pilgrim failed to appeal the May 2000 decision of the assessor to the Board of Review within thirty (30) days thereof as set forth in the section, it was untimely. The City further argues that the sections relied upon by Harvard Pilgrim speak in terms of "institute an action or proceeding" which the City perceives as allowing the commencement of a new action not the appeal of an existing one "administratively or judicially" which is time barred by statute.
It is conceded that there is no Rhode Island case law on point and the parties did very well in arguing their respective positions by defining terms and words, such as action and proceeding, drawing analogies and emphasizing the plain language of various statutes.
In the Court's view, the City's argument is more persuasive and finds that the operative word in the sections of law under consideration is "institute" which in its ordinary legal meaning connotes the commencement of a new legal proceeding not the continuation of a component of an already existing law suit such as here, a tax case with progressive steps of appeal.
There is also a very practical reason for not allowing the extension sought here in tax cases. As pointed out by the City, the legislature in providing for a short appeal period is to insure that tax disputes are resolved expeditiously so that tax rolls may be finalized, a concern expressed with approval by our Supreme Court in Northgate Associates v.Shorey, 541 A.2d 1192 (R.I. 1988).
For the above reasons, the Court finds that Harvard Pilgrim's appeal for taxable year 1999 was untimely filed and, therefore, judgment for the City in P.C. 01-4263 is appropriate.
 2000 Tax Year: C.A. No. PC 01-4264
Based upon the annual return filed by Harvard Pilgrim dated January 31, 2000 for its tangible property as of December 31, 1999, the City valued various types of property at $9,183,600.00 for the 2000 tax year. The City assessed Harvard Pilgrim $770,136.70 which Harvard Pilgrim paid in four quarterly installments. The property subject to tax for 2000 included, tangible personal property, computer equipment, inventory/stock-in-trade supplies, leased personal property and leasehold improvements.
Harvard Pilgrim filed a timely appeal and based upon evidence it introduced alleges that the fair market value of its tangible personal property as of December 31, 1999 was $3,401,255.00. It calculated that the correct amount of tax should have been $285,229.24, therefore seeking a tax rebate in the amount of $484,907.46.
Earlier in this Decision, the Court concluded that the use of cost minus depreciation is not per se illegal. Because of the bases upon which the first three appeals were decided, it was not necessary for the Court to specifically address the application of the City's cost minus depreciation method to determine fair market value. For taxable year 2000, however, the issue is central to Harvard Pilgrim's claim of overpayment.
As noted elsewhere in this Decision, Thomas Rossi, the City's Tax Assessor, testified that in developing depreciation schedules, the City did not materially consider physical depreciation, functional, economic or external obsolescence. He testified as previously observed that assets purchased in taxable year 1999 would not necessarily depreciate and did not consider ranges of life for computers, but relied on newspapers for the value of used computers. Again, recall that a City expert testified that the City's approach had been to use acquisition costs, not fair market value for assessment purposes.
In contrast, for taxable year 2000, Harvard Pilgrim introduced the testimony of Jeffrey Lieberman, consultant and agent to the Liquidator of Harvard Pilgrim. Lieberman testified that he had a Masters Degree in Business Administration and was certified in the area of Hospital Financial Management, working since 1980 almost exclusively in the hospital industry. At various hospitals he has held the positions of budget information officer, chief financial officer, controller, and eventually becoming an independent consultant. He has since provided interim executive services in the field throughout the country before becoming involved in November 1999 with Harvard Pilgrim assisting in the rehabilitation efforts serving as chief financial officer of the group.
Together with his testimony and other exhibits, Harvard Pilgrim established that its annual return included net book value reports for its office fixtures/equipment and computer equipment, which also contained acquisition costs and calculation of depreciation for each identified asset and for the net book depreciated value of each asset.
Through Lieberman, Harvard Pilgrim introduced an exhibit (Plaintiff's Ex. 15) which contained among other things, a summary of Harvard Pilgrim's 1998 and 1999 acquisitions of office fixtures and equipment and computers, leasehold improvements and the Norman Levy appraisal of 1998 with applicable exclusions and/or adjustments. The adjustments made for office equipment acquisition costs were to remove certain freight, labor and shipping costs; and, adjustments for computer software and hardware, were to remove installation costs for customized software, remove engineering and design costs as well as shipping and consulting costs. Harvard Pilgrim justified the adjustments on the ground that they were not assessable or ratable costs. Harvard Pilgrim applied an obsolescence adjustment to the computer equipment acquired during 1998 and 1999 based upon its experience of selling such assets on the open market at about 20% of acquisition cost. Finally, Harvard Pilgrim made adjustments to leasehold improvements because certain of the reported assets had been previously abandoned.
Harvard Pilgrim therefore argues that the proper valuation of its assets for year 2000 after adjustments are:
Office and computer Computer equipment (Unadjusted Levy appraisal) $1,842.070.00 Office equipment 163,355.00 Computer software 496,027.00 Leasehold improvements 416,127.00
Although previously finding that the use of depreciation schedules to determine fair market value are not illegal per se, the Court finds that the City's depreciation schedules and methods used for tax year 2000 do not reflect the fair market value of Harvard Pilgrim's assets. It was established that an assessor is mandated to apply techniques which accurately assess the value of property. By Rossi's own testimony, in developing depreciation schedules for year 2000, he did not materially consider physical depreciation, functional economic or external obsolescence. By claiming uniformity of employment of its method, the City cannot successfully insulate itself from Harvard Pilgrim's challenge that it is deficient according to acceptable assessment standards.
The failure of the City to consider physical depreciation and obsolescence factors among other things as argued by Harvard Pilgrim renders the City's method of assessment fundamentally flawed as constituted and applied and did not properly reflect the fair market value of Harvard Pilgrim's ratable assets for year 2000.
The Court finds that the evidence submitted by Harvard Pilgrim supports its claims of over assessment for year 2000; that its adjustments were supported by the evidence and made in accordance with generally accepted assessment principles; that its method of computing the fair market value of its ratable and assessable assets to determine fair market value were within generally acceptable assessment practices; and that its computations as to actual value of its assessable assets for year 2000 and its tax liability thereon are accurate and correct.
For the above reasons, the Court finds that Harvard Pilgrim's correct tax bill for year 2000 is $285,229.24, not the $770,136.70 which was assessed and, therefore, judgment in the overpaid amount of $484,907.46 is appropriate.
Based upon the discussion and analysis of the issues presented in the four consolidated actions and the findings articulated in this Decision, judgment shall enter for Thomas Rossi, as Tax Assessor, in PC 98-4168; PC 99-2966 and PC 01-4263. Judgment shall enter for Harvard Pilgrim Health Care of New England, Inc. in PC 01-4264 in the amount of $484,907.46, interest and costs.
Counsel shall submit an order consistent with this Decision.
[1] The McEachern appraisal was admitted in order to ensure that a complete record be established if Harvard Pilgrim's allegations of over assessment were determined to be well founded and an appeal resulted.